STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

09-235


STATE OF LOUISIANA

VERSUS

ALFONZO JERMAINE JOHNLOUIS


**********

APPEAL FROM THE
SIXTEENTH JUDICIAL DISTRICT COURT
PARISH OF IBERIA, NO. 07-1162
HONORABLE EDWARD M. LEONARD, JR., DISTRICT JUDGE
**********

**BILLY HOWARD EZELL**
**JUDGE**

**********

Court composed of Marc T. Amy, Billy Howard Ezell, and James T. Genovese, Judges.

**CONVICTION FOR POSSESSION OF COCAINE AFFIRMED;
SENTENCE FOR POSSESSION OF COCAINE AMENDED;
CONVICTION FOR TRANSACTIONS INVOLVING PROCEEDS FROM
DRUG TRANSACTIONS SET ASIDE AND VACATED; REMANDED
WITH INSTRUCTIONS.**

**J. Phillip Haney**
**District Attorney**
**300 Iberia Street, Suite 200**
**New Iberia, LA 70560**
**(337) 369-4420**
**Counsel for Appellee:**
**State of Louisiana**

William Jarred Franklin
Louisiana Appellate Project
3001 Old Minden Road
Bossier City, LA 71112
(318) 746-7467
Counsel for Defendant/Appellant:
Alfonzo Jermaine Johnlouis

Jeffrey J. Trosclair
Assistant District Attorney Sixteenth Judicial District Court
500 Main Street, Fifth Floor
Franklin, LA 70538
(337) 828-4100
Counsel for Appellee:
State of Louisiana

Alfonzo Jermaine Johnlouis
Louisiana State Penitentiary
Hickory 1
Angola, LA 70712

**EZELL, JUDGE.**

The Defendant, Alfonzo Jermaine Johnlouis, was charged by bill of information filed on February 22, 2007, with possession of at least 28 but less than 200 grams of cocaine, in violation of La.R.S. 40:967; possession of marijuana, in violation of La.R.S. 40:966; and transactions involving proceeds from drug offenses, in violation of La.R.S. 40:1041. A plea of not guilty was entered on March 7, 2007. On September 17, 2007, the charge of possession of marijuana was severed. Trial by jury commenced on September 18, 2007, and the jury subsequently found the Defendant guilty on the remaining two counts.

A bill of information charging the Defendant as an habitual offender was filed on September 19, 2007. The Defendant was arraigned on January 30, 2008, and denied the allegations. On February 15, 2008, the Defendant was adjudicated a second felony offender and sentenced to fifty years at hard labor and to pay a fine of $75,000.00 on the charge of possession of at least 28 but less than 200 grams of cocaine. On the charge of transactions involving proceeds from drug offenses, he was sentenced to serve ten years at hard labor and to pay a fine of $20,000.00. The sentences and fines were ordered to run concurrently with each other. The trial court also ordered that the sentences run concurrently with a parole violation in docket number 99-1470.

A "Petition for Appeal" was filed on March 12, 2008, and subsequently granted. The Defendant is now before this court asserting three assignments of error. Therein, the Defendant contends there is insufficient evidence to prove he committed the offenses at issue, the trial court erred in denying his motion to suppress, and the sentences imposed are excessive.

1

## FACTS

Police encountered the Defendant and his girlfriend, Semiko Brown, in the parking lot of Wrench Masters, an auto shop that was closed at the time. During a pat down, police found a large sum of cash in the Defendant's pocket. Police subsequently searched the Defendant's car and found 60.4 grams of cocaine under the driver's seat.

## ERRORS PATENT

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed for errors patent on the face of the record. After reviewing the record, we find there are three errors patent.

The bill of information contains an error in the citation for the charge of transactions involving proceeds from drug offenses. The bill of information provides this charge is a violation of La.R.S. 40:1049, instead of La.R.S. 40:1041. However, the erroneous citation of a statute in the charging instrument is harmless error as long as the error did not mislead the defendant to his prejudice. La.Code Crim.P. art. 464. The Defendant does not allege any prejudice because of the erroneous citation. Accordingly, this court finds that error is harmless.

Next, the trial court imposed an illegal sentence. In addition to the terms of imprisonment, the trial court imposed a fine of $75,000.00 on the enhanced sentence for the conviction of possession of cocaine, and a fine of $20,000.00 on the enhanced sentence for the conviction of transactions involving drug proceeds; the trial court ordered the $20,000.00 fine to run concurrently with the $75,000.00 fine.

In *State v. Dickerson*, 584 So.2d 1140 (La.1991), the supreme court held that the fine and default provisions of his sentence should be deleted:

> [Louisiana Revised Statutes] 15:529.1 requires that the sentencing judge vacate the original sentence and resentence the defendant as a multiple offender. In resentencing, the judge must impose a sentence authorized by La.Rev.Stat. 15:529.1. That statute does not authorize the imposition of a fine, but

2

only provides for enhanced sentences relating to the term of imprisonment. The trial judge was therefore without authority to impose a fine on resentencing under La.Rev.Stat. 15:529.1.

Accordingly, the fine and default provisions of defendant's sentence are deleted.

In light of the *Dickerson* case and La.R.S. 15:529.1, the court amends the Defendant's sentences to delete the fine provisions and instructs the trial court to make an entry in the minutes of court to reflect the amendment.

## ASSIGNMENT OF ERROR NUMBER ONE

In his first assignment of error, the Defendant contends there was insufficient evidence to prove his guilt beyond a reasonable doubt for the offenses of possession of at least 28 but less than 200 grams of cocaine and financial transactions involving proceeds from drug offenses.

In reviewing the sufficiency of the evidence to support a conviction for negligent homicide, an appellate court in Louisiana is controlled by the standard of review adjudged by the United States Supreme Court in *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979),

> "[T]he appellate court must determine that the evidence, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime had been proved beyond a reasonable doubt." *State v. Captville*, 448 So.2d 676, 678 (La.1984).

*State v. Desoto*, 07-1804, p. 7 (La. 3/17/09), 6 So.3d 141, 146 (alteration in original).

On December 20, 2006, at approximately 11:30 p.m., police officer Kirk Dunn and a trainee drove past Wrench Masters auto repair shop. Dunn saw two cars in the parking lot and a man crouched down by the tire of one of the cars. Since the business closed at approximately 5:00 p.m., Dunn and the trainee returned to the business and initiated contact with the Defendant and his girlfriend, Semiko Brown. When Dunn and the trainee arrived at Wrench Masters, they were approached by

3

Brown. Brown informed Dunn that her car had been repaired, and she and the Defendant were there to pick it up. Her keys were supposed to be on one of the tires.

Dunn verified that Brown owned the car. During that time, the Defendant continued to look for Brown's keys. When Dunn approached the Defendant, the Defendant corroborated Brown's story and said he "brought" her to Wrench Masters. Dunn testified that the Defendant was nervous, stuttering, shaking, and would not make eye contact with him.

The driver's door of the Defendant's car, which the Defendant and Brown had arrived at Wrench Masters in, was open. Dunn testified that when he passed near the car, he smelled a strong odor of burnt marijuana. On direct examination, Dunn testified the Defendant did not respond when asked about the odor. However, on cross-examination, he testified that the Defendant denied having smoked marijuana.

Dunn testified that because the Defendant was nervous and uncooperative, he conducted a pat down of the Defendant. Dunn detected a large bundle in one of the Defendant's pocket. Dunn testified that when asked what the object was, the Defendant refused to answer. Thus, Dunn removed what turned out to be a large wad of money from the Defendant's pocket. Dunn did not know how the Defendant got the money and testified that the Defendant said he was not employed at that time. Dunn admitted he did not include information about the Defendant's employment status in the police report.

Dunn subsequently searched the Defendant's car and found two rocks of crack cocaine under the driver's seat. As a result, the Defendant was arrested for possession of crack cocaine, but Brown was not. Dunn testified that he did not determine who drove the Defendant's car to Wrench Masters. Additionally, he did not see anyone handle the drugs, and he could not say they did not belong to Brown.

4

Semiko Brown testified that she was the Defendant's girlfriend. She then admitted that on November 21, 2006, she had been charged with possession with intent to distribute Lortab.[1]

Brown testified that she had the Defendant's car from approximately 10:00 a.m. until 11:18 p.m. on the date in question. She did not know where the Defendant was from 10:00 a.m. until 3:00 p.m. At approximately 10:30 p.m., the Defendant met her, and she drove to Wrench Masters.

Brown testified that she drove the Defendant's car to Wrench Masters to pick up her car, the key to which was supposed to be left on a tire. After she was at the shop for approximately two minutes, the police arrived and asked what she was doing. While she spoke to police, the Defendant looked for the key. She then gave an officer her registration and driver's license. The officer then said he smelled burnt marijuana coming from the Defendant's vehicle.

Brown testified that she never saw the Defendant handle any illegal narcotics while he was with her. She also acknowledged that Dunn did not ask if the drugs he found under the seat of the Defendant's car were hers. Brown testified that the Defendant was in the back of the police car when the drugs were found, and the drugs were found the third time the car was searched. She further testified that police said they would let her go if she wrote a statement.

On cross-examination, Brown was questioned about the drugs as follows:

Q. And, during that questioning, you admitted that you didn't - that wasn't your drugs that were in the car, correct?

A. Can I plead the fifth.

Q. During that questioning, at that time, at the time that I questioned you a week or so ago, you said that wasn't - it wasn't your drugs, correct? At that time?

---

[1]This offense occurred before those at issue in the case at bar.

A. I plead the fifth.

Q. That's not my question. My question is, at that particular time that I questioned you -

. . . .

Q. I'm going to ask you again, and I'm going to get the date so that it's accurate, on August 23, 2007, you testified under oath, correct?

A. Yes.

Q. You raised your right hand and you swore to tell the truth, correct?

A. Yes.

Q. You testified that day?

A. Yes.

Q. You testified that those drugs that were found in that car were not your drugs, correct?

A. It was not ours.

Q. You said, you didn't know anything about those drugs, correct?

A. I didn't know.

Q. What's that?

A. I didn't know.

Q. You didn't know anything about it?

A. No.

Q. Wasn't your drugs, correct?

A. It wasn't ours.

Q. Those drugs were not for you, correct?

A. It wasn't ours.

. . . .

Q. - own or possess those drugs.

A. No.

6

Q. Okay. You didn't even know they were in there?

A. No.

Q. So you can't say who they were for?

A. Yes, I can.

Q. You never [sic] nobody, anybody put them in that car, correct?

A. 'Cause I had the car that day.

Q. That day. You didn't put [sic] in that car, right?

A. No.

Q. They weren't for you, correct?

A. It wasn't ours.

Q. You didn't even know it was in there, right?

A. Right.

Q. Okay. So there's no way you can come into court today and say, those drugs were not for Mr. Johnlouis?

A. It wasn't.

Q. Just because you believe that, because you're his girlfriend?

A. 'Cause I know.

Q. How do you know if you didn't see anybody put them in there?

A. It wasn't in there.

Q. You don't want it to be his because you don't want to see him [sic] jail, correct?

A. No.

Q. You don't want to see him in jail, correct? Is that a fair statement?

A. It wasn't his. It wasn't his.

Q. Yes or no? Yes or no? You do not want to see Mr. Johnlouis in jail, yes or no?

A. No response.

. . . .

BY THE WITNESS (MS. BROWN):

No.

On redirect examination, she testified that she knew the Defendant did not put the drugs under the car seat.

Brown also testified that the money found in the Defendant's pocket was not hers and, during the time she knew the Defendant, he did not have a job.

Kevin Ardoin, a forensic chemist employed by the Acadiana Crime Lab, was qualified as an expert in forensic chemistry. Ardoin testified that the material seized from the Defendant's car was 60.4 grams of crack cocaine.

Possession of at Least 28 but Less Than 200 Grams of Cocaine

To support a conviction for possession of at least 28 but less than 200 grams of cocaine, the State had to prove the Defendant was in possession of cocaine in the quantity stated and that he knowingly possessed it. La.R.S. 40:967(F)(1)(a).

"Possession of narcotic drugs can be established by actual physical possession or by constructive possession." *State v. Hongo*, 06-829, p. 4 (La.App. 3 Cir. 12/6/06), 944 So.2d 856, 859 (quoting *State v. Davis*, 05-543, p.5 (La.App. 3 Cir. 12/30/05), 918 So.2d 1186, 1190, *writ denied*, 06-587 (La. 10/13/06), 939 So.2d 372).

> The supreme court in *State v. Toups*, 01-1875, pp. 3-4 (La.10/15/02), 833 So.2d 910, 913, summarized the law on constructive possession as follows:
>
>> A person may be in constructive possession of a drug even though it is not in his physical custody, if it is subject to his dominion and control. Also, a person may be deemed to be in joint possession of a drug which is in the physical custody of a companion, if he willfully and knowingly shares with the other the right to control it. . . . Guilty knowledge is an essential ingredient of the crime of unlawful possession of an illegal drug. . . .

8

> *State v. Trahan*, 425 So.2d 1222 (La.1983)
> (citing *State v. Smith*, 257 La. 1109, 245
> So.2d 327, 329 (1971)).  However, it is well
> settled that the mere presence in an area
> where drugs are located or the mere
> association with one possessing drugs does
> not constitute constructive possession.  *State
> v. Harris*, 94-0970 (La.12/8/94), 647 So.2d
> 337;  *State v. Bell*, 566 So.2d 959 (La.1990).
>
> A determination of whether there is
> "possession" sufficient to convict depends on
> the peculiar facts of each case.  Factors to be
> considered in determining whether a
> defendant exercised dominion and control
> sufficient to constitute constructive
> possession include his knowledge that drugs
> were in the area, his relationship with the
> person found to be in actual possession, his
> access to the area where the drugs were
> found, evidence of recent drug use, and his
> physical proximity to the drugs.  *State v.
> Hughes*, 587 So.2d 31, 43 (La.App. 2
> Cir.1991), *writ denied*, 590 So.2d 1197
> (La.1992);  see also *Bujol v. Cain*, 713 F.2d
> 112 (5 Cir.1983), *cert. denied*, 464 U.S. 1049,
> 104 S.Ct. 726, 79 L.Ed.2d 187 (1984) (listing
> above factors as well as a sixth factor:
> "evidence that the area was frequented by
> drug users").

*State v. Jacobs*, 08-1068, pp. 3-4 (La.App. 3 Cir. 3/4/09), 6 So.3d 315, 318 (alteration

in original).  "[S]ince knowledge is a state of mind, it need not be proven as fact, but

rather may be inferred from the circumstances." *State v. Major*, 03-3522, pp. 8-9 (La.

12/1/04), 888 So.2d 798, 803 (citation omitted).

In *State v. McGraw*, 43,778 (La.App. 2 Cir. 12/10/08), 1 So.3d 645, the defendant

was convicted of attempted possession of hydrocodone.  Police stopped the defendant

for making an improper turn at an intersection.  The officer took possession of a cup

located in the cup holder of the defendant's vehicle and determined that it smelled

like alcohol.  The officer arrested the defendant for the improper turn and placed him

9

in the patrol car. The officer then searched the driver's side of the vehicle and found marijuana in the driver's door pocket and hydrocodone in the middle console. A search of the defendant revealed five hundred dollars in cash. The passenger was arrested because there was an outstanding warrant for his arrest, and he attempted to dispose of a rock of crack cocaine.

The court noted that because the hydrocodone was not in the actual possession of the defendant or the passenger, the State was required to prove the defendant constructively possessed the pill. The court pointed out that the facts showed the pill was in the middle console of a car owned by the defendant. The console was in arm's reach of the defendant, raising an inference that it was he who had complete control over the pill hidden in his vehicle. Furthermore, the discovery of other drugs in the car and the large sum of cash found on his person lead to an inference of his involvement in illegal drug activity. The evidence showed the defendant had access to the two areas where drugs were found and was in the car with a passenger who was carrying drugs. The court held, based on this evidence, the jury could have reasonably concluded the defendant committed an act tending directly toward the accomplishment of his intent, possession of hydrocodone.

In *State v. Ankrum*, 573 So.2d 244 (La.App. 1 Cir. 1990), the court concluded the evidence was sufficient to support possession of cocaine convictions for all three occupants of a vehicle where cocaine was found. Police received a tip that defendants were in possession of cocaine. The tip described the defendants' vehicle and the general location of the vehicle. The police spotted the vehicle and started following the car in an unmarked police unit. After the rear-seat passenger looked back and apparently recognized the police unit, the car accelerated and ran a stop

sign. The officer activated his lights and siren, and a chase ensued during which the driver committed several more traffic violations.

The vehicle was ultimately stopped, and all of the occupants became involved in physical altercations with the police. The car was later searched at the police station where a clear plastic bag containing marijuana was found on the front passenger seat, and a clear bag of rock cocaine was found on the back right floorboard under papers and other debris. The court noted that the cocaine was not cleverly concealed or in any way out of reach of each defendant and that the record supported a finding that all three defendants had constructive possession of the cocaine. The court affirmed the convictions, concluding that a rational trier of fact could have found beyond a reasonable doubt that each defendant had dominion and control over the cocaine and knowingly possessed it.

The case at bar involves constructive possession, as no one was found in actual possession of the drugs located under the driver's seat of the Defendant's car. Evidence regarding who drove the Defendant's car to Wrench Masters was inconsistent. Brown testified that she drove, and Dunn believed the Defendant drove because the Defendant stated he "brought" Brown to Wrench Masters. Despite this inconsistency, the evidence at trial indicates that 60.4 grams of crack cocaine was found in a car owned by the Defendant. The other occupant of the car, Brown, testified that the drugs did not belong to "us." However, the Defendant had access to the area where the drugs were found whether he drove the car or was a passenger. Additionally, a large of sum of cash was found in the Defendant's pocket, and he did not have a job. Furthermore, the Defendant was nervous during his encounter with Dunn. Based on the testimony presented, a jury could conclude that the Defendant constructively possessed the crack cocaine found inside his car and infer his guilty

11

knowledge from these circumstances. Accordingly, the Defendant's conviction for possession of at least 28 but less than 200 grams of cocaine is affirmed.

Transactions Involving Proceeds from Drug Offenses

The Defendant was also convicted of transactions involving proceeds from drug offenses. Louisiana Revised Statute 40:1041(A) provides that:

> It is unlawful for any person knowingly or intentionally to conduct a financial transaction involving proceeds known to be derived from a violation of R.S. 40:966 et seq. when the transaction is designed in whole or in part to conceal or disguise the nature, location, source, ownership, or the control of the proceeds known to be derived from such violation or to avoid a transaction reporting requirement under state or federal law.

The only reported case involving a sufficiency review for this offense is *State v. Edwards*, 06-850 (La.App. 3 Cir. 6/13/07), 963 So.2d 419. In that case, police received information from confidential informants for approximately ten years that indicated the defendant was transporting drugs from Baton Rouge to New Iberia for street sale. The defendant was the center of an investigation on May 22, 2004, that involved mobile surveillance. The detectives conducting surveillance received information that the defendant had been conducting illegal narcotic activity at an abandoned residence located at 506 Corrine Street. The area was known to have a high rate of drug trafficking.

After the defendant arrived on the scene, two officers witnessed what appeared to be the defendant making narcotics exchanges and watched him store narcotics under a house and in the pipe of a metal clothesline. As officers moved in on the scene, the defendant initially fled but then ran toward an officer, who arrested him.

Approximately three hundred dollars was seized from the defendant's person, but no drugs or weapons were found on him. One officer retrieved plastic bags from inside the metal pipe and from underneath the house, which were tested and determined to both contain crack cocaine.

12

The defendant was convicted of conducting a financial transaction involving proceeds known to be derived from a violation of La.R.S. 40:966, *et seq*. This court reversed the defendant's conviction, finding the following:

> The Defendant argues that no evidence was presented by the State to prove that the money confiscated from his person was the result of drug proceeds. The Defendant adds that no controlled buys were conducted, no drugs were seized from his person, no other person was stopped who possessed drugs, and no confidential informants were present at trial. Further, the Defendant maintains that $305.00 is not an unusually large sum of money and does not automatically prove a sale of narcotics.
>
> Detective Davis testified that other than the two transactions he saw which are described above, he had no proof that the money found on the Defendant was from drug proceeds. He further testified that he did not see the other person put drugs in his pocket, nor did he see the Defendant counting out money.
>
> We were unable to find any jurisprudence which has applied this statute to the evidentiary facts of the case. However, because no money was seen changing hands, and because $305.00 is not an unusually large amount of cash, we find that the evidence is insufficient to find the Defendant guilty of this charge. Therefore, we overturn the Defendant's conviction for count two, transaction involving proceeds from a drug offense, in violation of La.R.S. 40:1049.

*Id*. at 426.

In the case at bar, there was no testimony regarding money changing hands and no testimony regarding the amount of cash on the Defendant's person.[2] Based on the lack of evidence and this court's ruling in *Edwards*, we find the evidence was insufficient to convict the Defendant of transactions involving proceeds derived from drug offenses.

---

[2]A photograph of the cash was admitted into evidence as State's Exhibit 2 and there was well in excess of $1,000.00 dollars. The actual cash was published to the jury.

13

## ASSIGNMENT OF ERROR NUMBER TWO

In his second assignment of error, the Defendant contends the trial court erred in denying his motion to suppress. The Defendant filed a motion to suppress on March 12, 2007. Therein, he sought to suppress all evidence seized by police.

The testimony at trial did not vary greatly from that at the hearing on the motion to suppress. As a result, we will not repeat all the testimony presented at the hearing, but will set forth additional information provided at that time.

Dunn testified that as Brown initially approached him, the Defendant walked toward his own car. Dunn eventually approached the Defendant's car in order to speak to him, and the Defendant was seated in the driver's seat at that time. Upon approaching the Defendant's car, Dunn detected the odor of burnt marijuana. Dunn told the Defendant he smelled burnt marijuana and asked if anyone had been smoking in the car. The Defendant did not respond and became nervous. In his report, Dunn said the Defendant said no one had been smoking.

Dunn patted down the Defendant and removed a bundle of cash from his pocket because he thought it might be a weapon. The Defendant was then handcuffed for the officer's safety and placed in the back of Dunn's patrol car.

Dunn then advised Brown that he smelled burnt marijuana and asked if anyone had been smoking. Brown began crying, which aroused Dunn's suspicions. Dunn then went back to the Defendant and asked if there was anything inside the car that he needed to know about. The Defendant did not respond. Dunn then searched the Defendant's car.

During the search, Dunn located two cookies of crack cocaine under the driver's seat. The search occurred after the trainee agreed that he smelled burnt marijuana.

Dunn further testified that the officers who later responded to the scene agreed that the car smelled of marijuana.

After Dunn found the crack cocaine, he advised the Defendant of his *Miranda* rights and that he was under arrest. The Defendant continued to remain silent, and Dunn searched the Defendant's person. Inside the Defendant's jacket pockets, Dunn found a "granulated white powdery substance" and a small green leafy substance that he believed was marijuana.

Brown denied crying when Dunn asked if anyone had been smoking marijuana. Brown further testified that the Defendant was handcuffed and placed in back of the patrol car before his vehicle was searched.

Brown testified that the Defendant's vehicle was running, and Dunn turned it off after the Defendant was placed in the patrol car. Additionally, she was ten feet away from the vehicle at that time.

After hearing the evidence presented by the parties, the trial court denied the motion to suppress and stated the following:

> All right. Gentlemen, I think that the Officer had a right to stop and investigate the presence of the automobile that night. It was Eleven-thirty (11:30) in a commercial parking lot. He saw people near the vehicles. I think he had a right to stop and investigate what was going on. Once he did that and the Officer testified that the defendant acted suspiciously, that he had a right to first of all, stopping, second of all, questioning as to his presence there, third of all, to frisking if he had any kind of reasonable suspicion that something may be wrong, which he obviously did. And I think he had a right to frisk him and he found a wad of money. The defendant continued, according to his testimony, acting suspiciously and the smell of marijuana. I heard the testimony that the car was running. I think he had a right to go to the car and find out what was going on inside the car.
>
> For all those reasons I find that the Officer acted appropriately and I will deny the motion to suppress.

> . . . .
>
> I think he had the right to make the arrest once he found reasonable suspicion and he found the money in his pocket, he smelled the marijuana.

This court discussed the standard applicable to the review of rulings on motions to suppress in *State v. Robertson*, 06-167, p. 7 (La.App. 3 Cir. 7/16/08), 988 So.2d 294, 300, (quoting *State v. Bargeman*, 98-617, p. 5 (La.App. 3 Cir. 10/28/98), 721 So.2d 964, 967, *writ denied*, 99-33 (La. 5/28/99), 743 So.2d 658), as follows:

> When a trial court rules on a defendant's motion to suppress, the appellate court must look at the totality of the evidence presented at the hearing on the motion to suppress. The appellate court should not overturn a trial court's ruling, unless the trial court's conclusions are not supported by the evidence, or there exists an internal inconsistency in the testimony of the witnesses, or there was a palpable or obvious abuse of discretion. *State v. Burkhalter*, 428 So.2d 449 (La.1983), and *State v. Gaspard*, 96-1279 (La.App. 3 Cir. 2/11/98); 709 So.2d 213. The admissibility of evidence seized without a warrant is a question for the trial court. Its conclusions on credibility and the weight of testimony regarding the voluntariness of a consent for admissibility purposes will not be overturned on appeal, unless the conclusions are unsupported by the evidence. *State v. Gachot*, 609 So.2d 269 (La.App. 3 Cir.1992), *writ denied*, 617 So.2d 1180 (La.1993), *cert. denied*, 510 U.S. 980, 114 S.Ct. 478, 126 L.Ed.2d 429 (1993).

In brief to this court, the Defendant asserts that he was arrested when Dunn handcuffed him. In support of this argument, the Defendant cites La.Code Crim.P. art. 201, which defines an arrest as "the taking of one person into custody by another. To constitute an arrest there must be an actual restraint of the person. The restraint may be imposed by force or may result from the submission of the person arrested to the custody of the one arresting him." The Defendant asserts that a valid arrest must be supported by probable cause that a crime occurred, and evidence seized as the result of an invalid arrest is inadmissible as fruit of the poisonous tree.

16

The Defendant argues that should this court find that the arrest was valid because the search exceeded the scope of a search incidental to a lawful arrest. In support of this argument, the Defendant cites *Arizona v. Gant*, __ U.S. __, 129 S.Ct. 1710 (2009). In *Gant*, the Supreme Court concluded that "circumstances unique to the automobile context justify a search incident to arrest when it is reasonable to believe that evidence of the offense of arrest might be found in the vehicle." *Id*. at 1714. Gant had been arrested for driving with a suspended license and placed in the back of a patrol car. Officers then searched his vehicle and found cocaine in a jacket in the back seat. *Id*. In those circumstances, the Court deemed the warrantless search of Gant's vehicle inappropriate because the authorities "could not reasonably have believed" that evidence of the offense for which Gant was arrested might be found in his car. *Id*. at 1719. *Gant* is inapplicable to the facts of the case at bar, as is evident from the discussion below.

> An arrest occurs when the circumstances indicate intent to affect an extended restraint on the liberty of the accused, rather than at the precise time an officer tells an accused he is under arrest. *State v. Gibson*, 97-1203 (La.App. 5 Cir. 3/25/98), 708 So.2d 1276. A seizure is an arrest, rather than an investigatory stop, when a reasonable person in the defendant's position would have understood the situation to be a restraint on freedom of movement of the degree that the law associates with a formal arrest. *State v. Cojoe*, 01-2465 (La.10/25/02), 828 So.2d 1101, citation omitted. However, the use of actual restraint does not, alone, transform a street encounter between the police and a citizen into an arrest because an investigatory stop necessarily "involves an element of force or duress, temporary restraint of a person's freedom to walk away." *State v. Broussard*, 00-3230 (La.5/24/02), 816 So.2d 1284, 1286, *per curiam*, (citation omitted).

> In *State v. Cojoe*, supra, the Louisiana Supreme Court explained that there is no specific test to determine whether an encounter is an arrest or investigatory stop:

> > Although a seizure occurs for Fourth Amendment purposes either when an individual has been subjected to

> physical restraint or when he submits to the assertion of official authority, *California v. Hodari D.*, 499 U.S. 621, 626, 111 S.Ct. 1547, 1551, 113 L.Ed.2d 690 (1991), no bright-line rule exists for distinguishing between investigatory stops, characterized by brief restraint imposed on a lesser showing of reasonable suspicion, *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), from arrests based on probable cause.
>
> *Id.* at 828 So.2d at 1103.

*State v. Smith*, 06-557, pp. 6-7 (La.App. 5 Cir. 11/28/06), 947 So.2d 95, 99, *writ denied*, 06-2960 (La. 9/14/07), 963 So.2d 993. "An arrest made without probable cause is illegal and the seizure of evidence pursuant to an illegal arrest is also illegal." *State v. Graham*, 01-1232, p. 10 (La.App. 5 Cir. 5/29/02), 820 So.2d 1101, 1106, *writ denied*, 02-1770 (La. 12/19/02), 833 So.2d 329.

We need not determine whether the Defendant was under arrest when he was handcuffed and placed in the patrol car, but will instead discuss the search of the Defendant's car.

> The Fourth Amendment to the United States Constitution protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. Similarly, the Louisiana Constitution provides that "[e]very person shall be secure in his person, property, communications, houses, papers, and effects against unreasonable searches, seizures, or invasions of privacy." La. Const. art. 1, § 5. A search conducted without a warrant based upon probable cause is per se unreasonable unless the state is able to show that it falls in one of a carefully defined set of exceptions based on the presence of exigent circumstances. *Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); *State v. Long*, 2003-2592 (La.9/9/04), 884 So.2d 1176, fn. 6, *cert. denied*, 544 U.S. 977, 125 S.Ct. 1860, 161 L.Ed.2d 728 (2005).
>
> One exception to the warrant requirement is when there is probable cause to search an automobile. The warrantless search of an automobile is not unreasonable if there is probable cause to justify the search, without proving additional exigency, when the automobile is readily mobile because there is an inherent risk of losing evidence.

18

> *Maryland v. Dyson*, 527 U.S. 465, 119 S.Ct. 2013, 144
> L.Ed.2d 442 (1999); *United States v. Ross*, 456 U.S. 798,
> 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982); *State v. Long*,
> *supra*. This exception "rests in part on the premise that if
> the officers may seize a vehicle and immobilize it for
> however long it takes to secure a warrant they may conduct
> an immediate search." *Chambers v. Maroney*, 399 U.S. 42,
> 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970); *State v. Kelley*,
> 2005-1905 (La.7/10/06), 934 So.2d 51, *cert. denied*, ---
> U.S. ----, 127 S.Ct. 691, 166 L.Ed.2d 536 (2006).
>
> Probable cause exists when the facts and circumstances
> within the arresting officer's knowledge and of which he
> has reasonable and trustworthy information are sufficient
> to justify a man of average caution in the belief that the
> person to be arrested has committed or is committing an
> offense. LSA-C.Cr.P. art. 213(3); *Beck v. Ohio*, 379 U.S.
> 89, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964); *State v. Ceaser*,
> 2002-3021 (La.10/21/03), 859 So.2d 639; *State v. Morris*,
> 38,928 (La.App. 2d Cir.9/22/04), 882 So.2d 1221.

*State v. Brown*, 42,188, 42,189, 42,190, pp. 20-22 (La.App. 2 Cir. 9/26/07), 966 So.2d 727, 746-47, *writ denied*, 07-2199 (La. 4/18/08), 978 So.2d 347 (alteration in original).

In *State v. Garcia*, 519 So.2d 788 (La.App. 1 Cir. 1987), *writ denied by State v. Rodriguez*, 530 So.2d 85 (La.1988), police stopped the defendant for a traffic violation and detected the odor of marijuana coming from the back of the truck. The court found the odor of marijuana gave the officer probable cause to believe the truck contained contraband, and the movable nature of the truck supplied the exigent circumstances to search the truck without a warrant.

In *State v. Paggett*, 28,843, p. 4 (La.App. 2 Cir. 12/11/96), 684 So.2d 1072, 1074, the court found the odor of marijuana on the defendant "alone justified a warrantless search of the vehicle under exigent circumstances."

In *State v. Williams*, 38,379, pp. 3-4 (La.App. 2 Cir. 11/25/03), 858 So.2d 878, 880-81, *writ denied*, 03-3535 (La. 3/12/04), 869 So.2d 807, the court stated:

> A state trooper's detection of the odor of marijuana coming from a defendant's car constitutes justification for a warrantless search. *State v. Cohen*, 549 So.2d 884 (La.App. 2d Cir.1989), *writ denied*, 559 So.2d 135 (La.1990). A police officer who makes a valid traffic stop of the defendant's vehicle has probable cause to search, based upon the faint odor of marijuana which someone was trying to mask by using air fresheners. *State v. Reynaga*, 93-1520 (La.App. 3d Cir.10/05/94), 643 So.2d 431. (The court also held that the search was valid based on probable cause, even if consent was not given.) Even a routine registration check, which led to a state trooper's detection of the odor of marijuana, resulted in sufficient probable cause to make a warrantless search and seizure valid. *State v. Arnold*, 34,194 (La.App.2d Cir.12/06/00), 779 So.2d 840.

Based on the cases cited herein, we find that Dunn's detection of the odor of burnt marijuana emanating from the Defendant's vehicle provided probable cause for the search of his vehicle. Accordingly, even if the Defendant had been illegally detained when he was handcuffed and placed in the patrol car, the search of his vehicle was not conducted pursuant to the illegal detention. Dunn had probable cause to search the Defendant's car upon smelling the odor of burnt marijuana, which occurred before the Defendant was handcuffed and placed in the patrol car. Therefore, this assignment of error lacks merit.

### ASSIGNMENT OF ERROR NUMBER THREE

In his third assignment of error, the Defendant contends the sentences imposed are excessive for this offender and these offenses. The Defendant asserts the trial court indicated he sold drugs for a living and was involved in drug sales at the time of his arrest. The Defendant asserts no evidence was introduced to support the State's allegation that he sold drugs for a living or that he was doing so on the night of his arrest. Further, the Defendant asserts the trial court failed to adequately consider the length of the sentences imposed amounts to a life sentence.

The Defendant did not object to the sentences at the time they were imposed nor did he file a motion to reconsider sentence.

This court has reviewed claims of excessiveness where no objection was made and no motion to reconsider sentence was filed. *See State v. Thomas*, 08-1358 (La.App. 3 Cir. 5/6/09), __ So.3d __; *State v. Perry*, 08-1304 (La.App. 3 Cir. 5/6/09), 9 So.3d 342; *State v. H.J.L.*, 08-823 (La.App. 3 Cir. 12/10/08), 999 So.2d 338. Accordingly, we will review the Defendant's claim as a bare claim of excessiveness. However, we will not consider the other claims asserted by the Defendant.

This court discussed the standard of review applicable to claims of excessiveness in *State v. Bailey*, 07-130, p. 3 (La.App. 3 Cir. 10/3/07), 968 So.2d 247, 250 (alteration in original), as follows:

> A sentence which falls within the statutory limits may be excessive under certain circumstances. To constitute an excessive sentence, this Court must find that the penalty is so grossly disproportionate to the severity of the crime as to shock our sense of justice or that the sentence makes no reasonable contribution to acceptable penal goals and[,] therefore, is nothing more than the needless imposition of pain and suffering. The trial judge has broad discretion, and a reviewing court may not set sentences aside absent a manifest abuse of discretion.
>
> *State v. Guzman*, 99-1753, 99-1528, p. 15 (La.5/16/00), 769 So.2d 1158, 1167 (citations omitted).
>
> In *State v. Smith*, 02-719, p. 4 (La.App. 3 Cir. 2/12/03), 846 So.2d 786, 789, *writ denied*, 03-562 (La.5/30/03), 845 So.2d 1061 (citations omitted), this court discussed the factors it would consider in order to determine whether a sentence shocks the sense of justice or makes no meaningful contribution to acceptable penal goals:
>
> In deciding whether a sentence is shocking or makes no meaningful contribution to acceptable penal goals, an appellate court may consider several factors including the nature of the offense, the circumstances of the offender, the legislative purpose behind the punishment and a comparison of the sentences imposed for similar crimes. While a comparison of sentences imposed for similar

crimes may provide some insight, "it is well settled that sentences must be individualized to the particular offender and to the particular offense committed." Additionally, it is within the purview of the trial court to particularize the sentence because the trial judge "remains in the best position to assess the aggravating and mitigating circumstances presented by each case."

The Defendant was convicted of possession of more than 28 but less than 200 grams of cocaine and adjudicated a second felony offender. Pursuant to La.R.S. 40:967 and La.R.S. 15:529.1, the offense carries a sentence of imprisonment at hard labor from fifteen to sixty years. The Defendant was sentenced to serve fifty years at hard labor.

Regarding the factors mentioned in *Bailey*, the parties stipulated that the Defendant had been previously convicted of drug racketeering. The State also informed the trial court that the Defendant was on parole at the time he was arrested for the offenses at issue herein.

The trial court sentenced the Defendant and noted the following:

> Mr. Johnlouis, in imposing this sentence I've taken into consideration Article 895, the sentencing guidelines. I find that you were engaged as the jury did in illegal conduct, knowingly and intentionally, that you were selling cocaine for a profit and that was I guess your major business enterprise or your major way of making a living. Having heard that you were on parole at the time that you did this it indicates strongly to the Court that any kind of lesser sentence would not be appropriate and certainly any period of probation or suspension of sentence would not succeed, because you had an opportunity to do that and you missed that opportunity. You didn't take advantage of that opportunity. The Court finds that any lesser sentence would deprecate the seriousness of the offense and that any lesser sentence would not change the way that you have lived your life in the recent past.

In *State v. Allen*, 93-838 (La.App. 5 Cir. 5/31/94), 638 So.2d 394, *writ granted*, 94-1754 (La. 11/29/94), 646 So.2d 390, *writ recalled*, 94-1754 (La. 3/16/95), 651 So.2d 1343, the court found a sentence of twenty years was not excessive for a second

felony offender convicted for possession of at least 28 but not more than 200 grams of cocaine.[3]

Although, to some, the sentence received by the Defendant in the case at bar appears to be excessive in light of the case cited herein, the court notes the Defendant was on parole at the time he committed the offense at issue. Thus, this court finds the Defendant's sentence for possession of at least 28 but not more than 200 grams of cocaine is not excessive.

## CONCLUSION

The Defendant's conviction for possession at least 28 but less than 200 grams of cocaine and adjudication as an habitual offender is affirmed. His sentence for that offense is amended to delete the fine provision, and the trial court is instructed to make an entry in the minutes of court to reflect the amendment. The Defendant's conviction and sentence for transactions involving proceeds derived from drugs transactions is vacated and set aside.

**CONVICTION FOR POSSESSION OF COCAINE AFFIRMED; SENTENCE FOR POSSESSION OF COCAINE AMENDED; CONVICTION FOR TRANSACTIONS INVOLVING PROCEEDS FROM DRUG TRANSACTIONS SET ASIDE AND VACATED; REMANDED WITH INSTRUCTIONS.**

---

[3]The supreme court granted certiorari to review the issue of the trial court's requiring the parties to alternate in their exercise of peremptory challenges. However, the defendant did not object to the procedure; therefore, the court recalled the writ of certiorari as improvidently granted.