# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 17-714

**STATE OF LOUISIANA**

**VERSUS**

**DERRICK WALKER STAFFORD**

**-AKA- DERRICK STAFFORD**

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
TWELFTH JUDICIAL DISTRICT COURT
PARISH OF AVOYELLES, NO. 2015-CR-190819-B
HONORABLE WILLIAM BENNETT, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

**JOHN D. SAUNDERS
JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of John D. Saunders, Marc T. Amy, and D. Kent Savoie, Judges.

**CONVICTIONS AND SENTENCES AFFIRMED.**

John Sinquefield
Matthew B. Derbes
Winston White
Assistant Attorneys General
P. O. Box 94005
Baton Rouge, LA 70804-9005
(225) 326-6200
COUNSEL FOR APPELLEE:
      State of Louisiana

Paul J. Barker
Christen Denicholas
Law Offices of Paul J. Barker, LLC
700 Camp Street, Suite 418
New Orleans, LA 70130
(504) 475-4466
COUNSEL FOR DEFENDANT/APPELLANT:
      Derrick Walker Stafford

Eric J. Santana
Law Offices of Eric Santana, LLC
4425 Clearview Parkway, Suite C
Metarie, LA 70006
(985) 414-3323
COUNSEL FOR DEFENDANT/APPELLANT:
      Derrick Walker Stafford

**SAUNDERS, Judge**

Defendant, Derrick Walker Stafford, was indicted on December 10, 2015, for second degree murder, a violation of La.R.S. 14:30.1, and attempted second degree murder, violations of La.R.S. 14:27 and 14:30.1. On January 5, 2016, Defendant filed a "Motion for Bill of Particulars." On February 3, 2016, the State filed a "State's Memorandum in Opposition to the Defense Motion for Bill of Particulars." On September 13, 2016, the State filed a "Notice of State's Intention to Introduce Other Crimes Evidence Under La.Code of Evidence Article 404(B) and Supporting Memorandum of Law." Defendant responded to the State's "Notice" on September 28, 2016, and filed a "Memorandum in Opposition." Defendant also filed a "Motion to Quash" and "Memorandum in Support" on September 21, 2016. A hearing was held on September 28, 2016, to address the above motions and responses. The trial court denied the motion to quash and granted the State's motion to introduce other crimes evidence.

A jury trial selection commenced on March 13, 2017. On March 24, 2017, Defendant was found guilty of manslaughter, a violation of La.R.S. 14:31, and attempted manslaughter, violations of La. R.S. 14:27 and 14:31. On March 30, 2017, Defendant filed a "Motion for New Trial and Memorandum in Support." The motion was heard on the date of sentencing, following which the motion was denied. Defendant waived all delay requirements, and the trial court proceeded to sentence him.

Defendant was sentenced to fifteen years imprisonment at hard labor for the attempted manslaughter conviction and forty years imprisonment at hard labor for the manslaughter conviction, with the first twenty years without the benefit of probation, parole, or suspension of sentence. The two sentences were ordered to

be served concurrently. Defendant filed a "Motion to Reconsider Sentence" on April 20, 2017. Following a hearing, the trial court denied the motion.

Defendant has perfected a timely appeal, wherein he raises five assignments of error, as follows: 1) The trial court erred in denying Mr. Stafford's motion for a bill of particulars; 2) The trial court erred in denying Mr. Stafford's motion to quash the bill of indictment in this case; 3) The trial court erred in admitting evidence of prior bad acts that were more prejudicial than probative; 4) It was error for the trial court to deny the motion for mistrial based on the introduction of a rape allegation against Mr. Stafford; and 5) Mr. Stafford's sentences of forty years and fifteen years are unconstitutionally excessive.

## FACTS:

After Christopher Few's ("Mr. Few") car was stopped following a traffic pursuit, Defendant and Officer Norris Greenhouse ("Officer Greenhouse") fired at a ninety-degree angle into the driver's side of the vehicle while the victim sat in his car. Officer Greenhouse shot four times, and Defendant shot fourteen times. Mr. Few was wounded. His six-year-old son, Jeremy Martis ("Jeremy"), who was sitting in the front seat of the car, was killed. Both officers were charged under separate lower court docket numbers with attempted second degree murder and second degree murder.

Testimony given at trial established that on November 3, 2015, Mr. Few picked up his six-year-old son, Jeremy, from school. He and his girlfriend, Megan Dixon ("Ms. Dixon"), dropped the boy off at the house of Ms. Dixon's aunt, Erica Slocum ("Ms. Slocum"), and went out to a bar in Marksville. Shortly thereafter, they got into an argument, and Ms. Dixon left the bar with some girlfriends. Mr. Few left at the same time. He picked up his son from Ms. Slocum's house. He then spied Ms. Dixon driving her friend's van. When the van was stopped at a stop

2

light, he approached the van on foot and attempted to get Ms. Dixon to get out and go home with him. The light changed, and Ms. Dixon drove on. As she drove away, she heard sirens. Mr. Few followed her briefly in his vehicle then passed her up with a police car in pursuit. She indicated that Mr. Few gestured towards Jeremy as he passed the van. She assumed he wanted her to take Jeremy home. Mr. Few pulled his vehicle over once, but she drove past him. Once again, while being pursued by a police car, Mr. Few passed her while pointing at Jeremy. However, she turned off to go to the casino with her friends.

Jason Brouillette ("Officer Brouillette") and Defendant were both officers with the Marksville City Police Department. However, on the evening of November 3, 2015, they were moonlighting for the Ward 2 City Marshal's Office. The officers received a transmission from Officer Greenhouse that he was in pursuit of a Kia SUV. The officers were close to the area and soon spotted Mr. Few's vehicle. Officer Brouillette turned his unit across the roadway in an attempt to block Mr. Few, but Mr. Few drove off the roadway and around the police unit. Officer Brouillette joined the chase behind Officer Greenhouse. Officer Brouillette testified that the chase was conducted at speeds approximately forty to fifty miles per hour. Officer Greenhouse attempted to pass Mr. Few to cut him off, but Mr. Few weaved his vehicle in a manner to block Officer Greenhouse from passing him. Shortly thereafter, Mr. Few entered a street that dead-ended, and he stopped with Officer Greenhouse's unit stopped right behind him. Officer Brouillette did not actually see Mr. Few's vehicle back into Officer Greenhouse's unit or the officer fall to the ground. He saw Mr. Few pull the Kia forward. He stood next to Officer Greenhouse and Defendant as they fired at Mr. Few's vehicle. While his gun was pulled, he did not believe he was threatened, and he did not fire his gun. He did not see Mr. Few with a weapon.

Defendant, who was thirty-three years old at the time of trial, testified that at the time of the shooting, he was acting in self-defense and defense of another. Defendant explained that after Mr. Few was stopped on the dead-end road, as he exited the police vehicle, he saw Mr. Few back into Officer Greenhouse's vehicle. Officer Greenhouse was able to get out of the way, however. Mr. Few then pulled his vehicle forward. At this point, Defendant had pulled his weapon and gave a loud verbal command for Mr. Few to exit the Kia and to show his hands. Defendant explained that he believed Mr. Few was either going to run into the woods or he was going to "ambush" them. Defendant insisted he never saw Mr. Few put his hands up. However, when Mr. Few looked back at the officers and backed towards them, Defendant "felt [he] had no choice but to save Norris[.]" He believed Mr. Few was using the vehicle as a dangerous weapon. While Defendant stated he was not aware at the time of how many times he fired his gun, he agreed the evidence established he fired fourteen times and acknowledged that three of the bullets that struck Jeremy were from his gun. He stated that he did not intend to kill when he fired his weapon, only to stop the threat. Defendant stated he did not know Jeremy was in the front seat of the vehicle.

Kenneth Parnell ("Lieutenant Parnell"), a lieutenant with the Marksville City Police Department, also joined the chase at speeds between twenty-five and thirty miles per hour. He arrived last at the dead-end street and parked his unit in such a way that Mr. Few had an "area where he could have got out." Lieutenant Parnell got out of his unit and stood between his unit and Officer Greenhouse's unit. While he never saw Mr. Few back the Kia SUV into Officer Greenhouse's unit or saw Officer Greenhouse fall to the ground, as the lieutenant exited his vehicle, he saw the Kia back up. This was when the shooting started. The lieutenant never

fired his gun, and he never saw Mr. Few with a gun. He testified he was not in fear for his life.

The jury also heard testimony for two crash scene constructionists. It was established that Officer Greenhouse's unit had been struck in the front end and Mr. Few's Kia's rear end exhibited damage consistent with backing into the police vehicle. The jury also heard testimony from two Louisiana State Police Criminalistics Laboratory ballistic analysts and firearm analysts who testified regarding the shots fired into Mr. Few's vehicle. Finally, the jury heard the testimony of an expert in the use of force. The expert explained in detail why physiologically it takes seconds after a suspect gives up for an officer under stress situations to stop firing his weapon. He testified that in a situation like what Defendant was experiencing, it was easy to make a wrong call because the mind does not receive all the information instantaneously.

**ASSIGNMENTS OF ERROR NUMBERS 1 AND 2**:

We will address assignments of error number one and two together, as the alleged errors are interrelated. Defendant's first argument is that the trial court erred when it did not order the State to respond to his motion for bill of particulars after he was arraigned with a short form indictment because the State offered open file discovery. Defendant's second argument is that because the State failed to respond to his motion, the indictment was rendered defective. We find no merit to these contentions.

A hearing was held on September 28, 2016, wherein the following motions were heard: "Defendant Greenhouse's Motion for Bill of Particulars[,] Defendant Stafford's Motion to Quash and Motion to Consolidate[,] and State of Louisiana Prieur 404 Motion."

5

Officer Greenhouse's counsel began the hearing with the argument that the State should have responded to his motion for a bill of particulars. He argued the State's strategy was to convict Officer Greenhouse of second degree murder of Mr. Few's son, Jeremy, using the "transferred intent" theory. Officer Greenhouse's defense counsel argued that because the State used a short form indictment, which stated only that on November 3, 2015, Officer Greenhouse committed the offense of second degree murder of Jeremy, a violation of La.R.S. 14:30.1, there was insufficient information provided to Officer Greenhouse to prepare an adequate defense. Officer Greenhouse argued that he did not learn how the State intended to prove his guilt of second degree murder until the State submitted a proposed jury instruction to the trial court which defined the killing of someone by "transferred intent." Officer Greenhouse requested that the trial court order the State to respond to its motion for a bill of particulars to verify that the element of transferred intent was going to be the basis of its argument to the jury. Noting that the State gave Officer Greenhouse open file discovery and that the information sought regarding the question of the State's theory of prosecution was satisfied during the hearing, the trial court denied Officer Greenhouse's motion. We note that Defendant never sought to join or adopt Officer Greenhouse's motion requesting that the trial court order the State to respond to its bill of particulars. Nor did Defendant object in any way to the trial court's ruling.

While Officer Greenhouse's motion was addressed, Officer Greenhouse and Defendant were not co-defendants, and Defendant did not adopt Officer Greenhouse's motion or object to the trial court's denial of the motion. As noted above, Officer Greenhouse's motion involved the theory of "transferred intent" concerning the shooting death of the six-year-old.

Next, Defendant argued that his and Officer Greenhouse's cases should be consolidated for the convenience of the defendants, the witnesses, and the trial court. Officer Greenhouse, however, objected, and the trial court denied the motion.

Although Defendant's motion for bill of particulars requested that the trial court order the State to comply with the motion, Defendant's motion was not addressed at the September 28, 2016 hearing; therefore, the trial court made no ruling regarding Defendant's motion. Accordingly, we find that Defendant's assignment of error number one lacks merit.

The trial court then took up Defendant's motion to quash the indictment, which alleged that the State should have included the phrase "specific intent" in the indictment because it was an essential element of the crime of attempted second degree murder. Defendant argues that had the State responded to his motion for bill of particulars, his constitutional right to specific notice of the nature and circumstances of the charge against him would not have been violated.

In pertinent part, second degree murder is defined as "the killing of a human being: (1) when the offender has a specific intent to kill or to inflict great bodily harm[.]" La.R.S. 14:30.1. The attempt statute, La.R.S. 14:27, in pertinent part, provides:

> A. Any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended; and it shall be immaterial whether, under the circumstances, he would have actually accomplished his purpose.

At the September 28, 2016, hearing, Defendant argued:

> The case law is pretty clear, you have to prove the specific intent to kill with attempted second degree murder. And the case law also is further clear and the law is that the indictment must state specific intent to kill must be in the indictment . . . . They failed to even put

7

that in there. And so I'm supposed to just believe based on the indictment alone because like I said they didn't do a bill of particulars.

An indictment shall be a "plain, concise, and definite written statement of the essential facts constituting the offense charged. It shall state for each count the official or customary citation of the statute which the defendant is alleged to have violated."  La.Code Crim.P. art. 464.

At the hearing, Defendant argued the indictment was defective and should be quashed.  He argued:

> Now we read their documents Your Honor, and all it says is that Mr. Stafford committed the offense of attempted second degree murder by committing the offense of attempted second degree murder. There's nothing alleged in there so if you're looking on the indictment itself, the face of it, just telling me that he did this is not enough. It's simply not.
>
> The law is pretty clear, essentially it requires whether any conceivable set of facts, as alleged in the bill of information together with those specified in the bill of particulars when particulars have been provided if found credible by the trier of fact can support a conviction.
>
> "You're looking at . . . you look at this indictment essential element of attempted second degree murder is specific intent to kill. "They failed to even put that in there.  And so I'm supposed to just believe based on the indictment alone because like I said they didn't do a bill of particulars.  I can't ask the court to look at the entire file, then we'd be getting into the merits of the case. That's not what a Motion to Quash is for."
>
> . . . .
>
> And the law is clear even if it's just a technical requirement.  It has to say specific intent, those words have to be in the indictment.

Following argument, the trial court ruled:

> And in addition as stated in the prior motions, the law is quite clear from the Louisiana Supreme Court that the normal statutory requirements that the - - each essential element of a crime be listed in an indictment is not required in a short from indictment; especially considering when open file discovery is granted.  Motion to Quash is therefore denied; objection to the ruling of the court is noted and error is assigned.

In *State v. Lauff*, 06-717, pp. 6-7 (La.App. 5 Cir. 2/13/07), 953 So.2d 813, 818, the fifth circuit stated:

> Both the Louisiana Supreme Court and this Court have consistently held that a motion to quash is, essentially, a mechanism to urge pre-trial pleas, *i.e.* pleas which do not go to the merits of the charge. *State v. Byrd*, 96-2302 (La.3/13/98), 708 So.2d 401, 411, *cert. denied,* 525 U.S. 876, 119 S.Ct. 179, 142 L.Ed.2d 146 (1998); *State v. Billard*, 03-319 (La.App. 5 Cir. 7/29/03), 852 So.2d 1069, 1074, *writ denied*, 03-2437 (La.2/6/04), 865 So.2d 739. At a hearing on such a motion, evidence is limited to procedural matters and the question of factual guilt or innocence is not before the court. *Billard, supra.* A court considering a motion to quash must accept as true the facts contained in the bill of information and in the bill of particulars, and determine as a matter of law from the face of the pleadings whether a crime has been charged. *Id*. While evidence may be adduced on the motion to quash, such evidence may not include a defense on the merits. *State v. Byrd,* 708 So.2d at 411. The question of factual guilt or innocence of the offense charged is not raised by the motion to quash. *Billard, supra.*

Defendant argues that "the only instrument the trial court could rely on in deciding the motion to quash was the short form bill of indictment, which is insufficient on its face with the requested bill of particulars. Therefore, the trial court erred in denying the motion to quash."

At the hearing, Defendant argued that the supreme court, in *State v. Bishop,* 01-2548 (La. 1/14/03), 835 So.2d 434, supported his position that an indictment which alleged attempted second degree murder must state that specific intent to kill was an element of the crime. The trial court, however, did not agree with Defendant's interpretation of the case. As reported in the lower appellate court's case, *State v. Bishop*, 34,637 (La.App. 2 Cir. 7/24/01), 792 So.2d 886, *writ granted,* 01-2548 (La. 8/30/02), 824 So.2d 1162. the defendant and an accomplice severely beat a man and left him lying in a field. The defendant was convicted of attempted second degree murder. Years later, after several post-conviction applications, the defendant obtained a reinstatement of his previously filed notice

of appeal. The appellate court ruled that the state failed to show specific intent to kill the victim and reduced the conviction to aggravated battery. However, the supreme court found the evidence was sufficient to show specific intent to kill and reinstated the conviction of attempted second degree murder. *Bishop*, 835 So.2d 434. Therein, the supreme court noted that the *jury instructions* regarding attempted second degree murder given to the jury erroneously stated that in order to convict, the state must prove "specific intent to kill or to inflict great bodily harm." *Id.* at 439. However, we did not find in the *Bishop* opinion where the supreme court stated that an indictment charging attempted second degree murder must include the phrase "specific intent to kill."

In *State v. Coleman,* 13-942, pp. 17-18 (La.App. 5 Cir. 5/14/14), 142 So.3d 130, 140-41, *writ denied*, 14-1224 (La. 1/23/15), 159 So.3d 1056 (footnote omitted), the fifth circuit discussed the content of a sufficient indictment:

> Article I, Section 13 of the Louisiana Constitution requires that an indictment inform a defendant of the nature and cause of the accusation against him. *State v. Chairs,* 12-363 (La.App. 5 Cir. 12/27/12), 106 So.3d 1232, 1240, *writ denied*, 13-0306 (La.6/21/13), 118 So.3d 413. This requirement is implemented by La. C.Cr.P. art. 464, which provides:
>
>> The indictment shall be a plain, concise, and definite written statement of the essential facts constituting the offense charged. It shall state for each count the official or customary citation of the statute which the defendant is alleged to have violated. Error in the citation or its omission shall not be ground for dismissal of the indictment or for reversal of a conviction if the error or omission did not mislead the defendant to his prejudice.
>
> La.C.Cr.P. art. 465 authorizes the use of specific short form indictments in charging certain offenses, including second degree murder. *Chairs*, 106 So.3d at 1240. Both this Court and the Louisiana Supreme Court have consistently upheld the constitutionality of these short forms. *Id.* (citing *Draughn,* 950 So.2d at 624).
>
> For instance, in *Chairs, supra*, the defendant, who was convicted of second degree murder, argued on appeal that the trial

court erred in denying his motion to quash the indictment. He argued in the motion that the short form was constitutionally deficient due to its failure to specify whether his prosecution was being pursued under the specific intent theory or the felony murder theory of second degree murder. *Chairs,* 106 So.3d at 1240. His indictment read in pertinent part: ". . . on or about the 8th day of November, 2009, the said ROGER D. CHAIRS . . . violated R.S. 14:30.1 in that [he] did commit second degree murder of a known juvenile (DOB 4/29/2002)." *Chairs,* 106 So.3d at 1241.

This Court determined that the defendant was fully aware of the nature of the charges against him and concluded that the trial court did not abuse its discretion in denying the defendant's motion to quash. *Id.* In reaching this conclusion, this Court noted that the indictment conformed to the short form provided in La.C.Cr.P. art. 465(A)(32) and that the defendant was provided with ample discovery, including police reports, arrest warrants, search warrants, crime lab reports, and statements of witnesses and co-defendants. *Id.*

Likewise, in the instant case, the indictment complied with the short form in La.C.Cr.P. art. 465(A)(32), as it provided: ". . . on May 7, 2007, the said CHARLES COLEMAN A/K/A 'BIRD" violated La. R.S. 14:30.1 in that he did commit the second degree murder of Marlon Turner."

While the record reflects that defendant requested and was provided with discovery, the contents of that discovery are not evident from the record. Nevertheless, where defendant does not complain of discovery violations and the indictment complies with the short form, defendant was adequately informed of the nature of the charges against him. Therefore, we find no abuse of discretion in the trial court's denial of defendant's motion to quash the indictment. *See State v. Love,* 00-3347 (La.5/23/03), 847 So.2d 1198, 1206 ("An appellate court is allowed to reverse a trial court judgment on a motion to quash only if that finding represents an abuse of the trial court's discretion.").

In the current case, the indictment read as follows:

On or about November 3, 2015, in the Parish of Avoyelles, **Derrick Walker Stafford** committed the offense(s) of LA R.S. 14:27(14:30.1); namely Second Degree Murder by attempting to commit second degree murder of Christopher Few:

In the instant matter, the element of "specific intent" is set out in both La.R.S. 14:30.1 and 14:27. Considering the two statutes together, if an accused severely beats the victim only with the intent to kill or to inflict serious bodily harm and the victim dies, then the accused is guilty of second degree murder.

11

However, if a defendant beats a victim with the intent to inflict serious bodily injury and the victim survives, the defendant is not guilty of attempted second degree murder, but is guilty of a different crime, a battery. *See Bishop*, 835 So.2d 434. If a defendant beats a victim or shoots the victim as in the current case, with the intent to kill, and the victim survives, then it is attempted second degree murder. The two statutes read together cannot be clearer. It did not take a bill of particulars to know the State's burden of proof in this case. Furthermore, as explained by the fifth circuit in *Coleman*, 142 So.3d 130, the Louisiana Supreme Court has consistently upheld the constitutionality of the short form indictment and has also held that when the state offers open file discovery, a bill of particulars is not warranted. At the hearing, Defendant agreed that the State had provided open file discovery. We find that the trial court did not err when it denied Defendant's motion to quash the indictment. Accordingly, we find that Defendant's assignment of error number two lacks merit.

**ASSIGNMENT OF ERROR NO. 3:**

Defendant argues that the trial court erred when it permitted evidence of other bad acts to be submitted to the jury. We find no merit to this contention.

Evidence of other crimes, wrongs or acts committed by a defendant is generally inadmissible because of the "substantial risk of grave prejudice to a defendant." *State v. Prieur,* 277 So.2d 126, 128 (La.1973). This general rule ensures that a defendant, who has committed other crimes, wrongs, or bad acts, will not be convicted of a present offense simply because he is perceived as a "bad person," irrespective of the evidence of his guilt or innocence. *Id.* The state may introduce evidence of other crimes, wrongs, or acts if it establishes an independent and relevant reason such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. La.Code Evid. art.

12

404(B)(1). Although a defendant's crimes, wrongs, or prior bad acts may be relevant and otherwise admissible under La.Code Evid. art. 404(B), the court must still balance the probative value of the evidence against its prejudicial effect before the evidence can be admitted. La.Code Evid. art. 403. "[A]ny inculpatory evidence is 'prejudicial' to a defendant, especially when it is 'probative' to a high degree." *State v. Germain*, 433 So.2d 110, 118 (La.1983). As used in the balancing test, "prejudicial" limits the introduction of probative evidence of prior misconduct only when it is unduly and unfairly prejudicial. *Id. See also Old Chief v. United States*, 519 U.S. 172, 180, 117 S.Ct. 644, 650 (1997).

At the hearing, following testimony by Rodney Owens, a trooper with the Louisiana State Police and the lead investigator, who testified to the above facts of the case, the State presented four witnesses who had previous encounters with Defendant while he was performing as a law enforcement officer. Steven McIntosh, who lived in Marksville, testified that while attending a Fourth of July celebration in 2013, he and a friend were watching some men having an argument when the police arrived and ordered everyone to leave the area. Mr. McIntosh stated that as he turned to leave, he dropped his keys. As he bent over to pick up his keys, he was "slammed" to the ground. Mr. McIntosh stated he attempted to explain he was retrieving his keys but as he lay handcuffed on his stomach on the ground, Defendant pepper-sprayed him in the eyes. Mr. McIntosh stated he was found guilty of disturbing the peace and fined. He agreed that Defendant did not threaten him with a gun.

Sammy Carmouche, who also lived in Marksville, stated that in June 2011, he had just arrived home from work when there was a knock on the door. An officer was at the door and advised him that a neighbor had accused him of shooting the neighbor's dog. Mr. Carmouch said he denied it, but the officer

pulled him out of the doorway and handcuffed him. He testified that as the officer pushed him down the porch steps, he accidently bumped into another officer. At this time, Defendant ran up to him and tasered him on the chest. Mr. Carmouch stated he was not fighting the officers or threatening. He stated his wife and children were standing on the porch watching it all happen. He said he had never been arrested before this time. He was convicted of resisting arrest and was given jail time and a year of probation. He agreed Defendant did not pull out his firearm. Theresa Carmouche, Mr. Carmouche's wife, corroborated his testimony. She stated that Defendant tasered Mr. Carmouche twice, once while he lay helpless on the ground.

Aleathia Barbin, who was a nurse, testified that one afternoon a repo-man showed up at her door. She objected to him repossessing her car because he did not have a court order to do so. She stated that the repo-man called the police. When the police arrived, she was arrested for disturbing the peace, handcuffed behind her back, and tossed into the back seat of a police car. She stated that while she sat in the police unit with her hands cuffed behind her back, Defendant reached in and tasered her in the stomach. She stated that she was not threatening or being aggressive. She said that Defendant did not pull out his gun. Ms. Barbin testified she was convicted of disturbing the peace.

Following testimony, the State argued the evidence was relevant and probative because it established a motive and intent to inflict harm on persons arrested—that Defendant's actions in these cases demonstrated a pattern of excessive force in response to an arrest situation after the arrestee ceased to be a threat.

Defendant argued the current circumstances were significantly different from the prior confrontations; primarily that in the prior cases, he never pulled out

14

his weapon. He argued that in the current case, he was reacting to a direct threat when the suspect backed his vehicle into Officer Greenhouse, in an attempt to harm the officer, and he was acting in defense of another and himself. Alternatively, Defendant argued that should the trial court find that the alleged prior acts were appropriate to be admitted at trial, the evidence was unduly prejudicial to Defendant. He argued the State was simply attempting to picture him as a bad man.

The trial court granted the State's motion to introduce the above testimony at trial and stated for the record:

> Well 404B specifically says that evidence of other crime or wrongs or acts. Doesn't have to be just a crime, are ordinarily not admissible. To be admissible it must show proof of motive, opportunity, intent, preparation, planning knowledge, identity, absence of mistake or accident.

> And I've got to tell counsel that upon reading first of the notice of intent, I read the notice of intent and I said man this is easy, this is all admissible. Then I read the memorandum in opposition and studied that and I said this isn't so easy. There's some legitimate issues here. That's why I said after hearing the evidence today and viewing the video evidence and the evidence presented in support of the notice, it became easy once again.

> First of all, the defense said that the prior acts and the law says must be similar. In the case here Mr. Stafford is accused of shooting when coming to the aid of another officer. Same thing happened in the other cases that were presented here today. Other officers were there and were on the scene and he's coming presumably to their aid. And the incident happens.

> The defense says in their memorandum the defendant was not arrested, tried, convicted or found civilly liable, the court must take judicial notice the civil litigation on some of the matters that were testified to by the State's witnesses today are still pending and are not over with. The fact that someone was not arrested, tried or convicted does not mean that it was not a bad act that is admissible under 404B.

> The defense also says that they are not similar acts and that he never pulled his weapon or fired at any of the alleged victims in those incidents. However, the evidence was beyond clear and convincing that he used a taser on these individuals who testified today and a taser certainly does meet the definition of a weapon. The defense also

15

said in their memorandum that Mr. Few was using his vehicle as a deadly weapon that night and that the defendant acted within the course and scope of his employment.

The video I saw at the time that the shooting began that weapon – that car was not being used as a deadly weapon at that time. If it was being used before hand and the evidence presents that, so be it. But at the time on the video that was played here today, that shooting occurred and from whether the distance where these police officers were, I dare say it was not even close to being a deadly weapon used at that time nor the evidence would indicate from review of that video that these officers were in an imminent danger at that time, as has been confirmed through the statements given from some of the officers Parnell and/or Brouillette to Officer Owens who testified today.

The defense seems to indicate or say that the facts of this case are so different; sure we're dealing with a charge of attempted murder and murder versus in these other case Mr. Stafford was not charged with a crime, I don't mean a crime didn't happen, that doesn't mean he couldn't be civilly liable. But these incidents to me after hearing these witnesses today are so similar.

He's coming to the aid of another officer and force is used. Now that doesn't mean that this evidence is so credible a jury has to accept it. The State will put on their evidence, and the defense has a right to defend that evidence. But it's certainly under the code due to the similar natures and under 404B it is the probative value greatly outweighs any prejudicial effect. Prejudice would come to Mr. Stafford if there were other acts as either a police officer where somebody attacked him, was coming at him and he shot his Taser at them or shot a gun at him or he's doing something on his private time as counsel said. But these are acts when he's going to the aid of other police officers, as he was doing presumably in this case. And in so doing the person who had allegedly broke the law, force was used upon that person. That's not . . . this is not my statement that Mr. Stafford did wrong, this is just a statement that what Mr. Stafford did in this case and what was testified to in the other cases is very factually similar.

It is the state's burden to prove that a defendant committed the other crimes, wrongs, or acts by clear and convincing evidence. *State v. Stevens,* 11-175, (La.App. 3 Cir. 10/5/11), 74 So.3d 803, 807, *writ denied,* 11-2496 (La. 3/30/12), 85 So.3d 115. In *State v. Day*, 12-1749, p. 6 (La.App. 1 Cir. 6/7/13), 119 So.3d 810, 814-15, the first circuit discussed prerequisites to finding that the intent

element is satisfied before other crimes evidence can be admitted as proof of intent, as follows:

> (1) the prior acts must be similar; (2) there must be a real and genuine contested issue of intent at trial; and (3) the probative value of the evidence must outweigh its prejudicial effect. *See* La.Code Evid. arts. 403 & 404(B); *State v. Kahey*, 436 So.2d 475, 488 (La.1983). The Louisiana Supreme Court has recognized the principle that where the element of intent is regarded as an essential ingredient of the crime charged, it is proper to admit proof of similar but disconnected crimes to show the intent with which the act charged was committed. *State v. Cupit*, 189 La. 509, 179 So. 837, 839 (1938). In *State v. Blank*, 2004-0204 (La.4/11/07), 955 So.2d 90, *cert. denied*, 552 U.S. 994, 128 S.Ct. 494, 169 L.Ed.2d 346 (2007), the State sought to introduce evidence that the defendant killed or attempted to kill the occupants of other residences during the commission of aggravated burglaries. The Louisiana Supreme Court found that the evidence met the three requirements enunciated in *Kahey*. The Supreme Court reasoned that "the acts were similar, in that they each involved home invasions where defendant entered the home to steal money, was caught by the resident, each of whom were somewhat elderly, and then killed or attempted to kill the resident." The Supreme Court further reasoned that "specific intent was a genuine issue at trial, in that it is an essential element of the crime, and was contested." *Blank*, 2004-0204 at 42, 955 So.2d at 125. Similarly, in *State v. Williams*, 96-1023, p. 30 (La.1/21/98), 708 So.2d 703, 725-726, *cert. denied*, 525 U.S. 838, 119 S.Ct., 99, 142 L.Ed.2d 79 (1998), the Supreme Court found that evidence demonstrating that the defendant shot a man during a robbery just hours before the crime charged was admissible in a first degree murder prosecution. The Supreme Court noted that the evidence of the earlier shooting was relevant to show that the defendant intended to fire the gun at the victim even though he claimed that the gun accidentally discharged.

In the instant matter, we find that the trial court did not err when it granted the State's motion to admit evidence of prior bad acts pursuant to La.Code Evid. art. 404(B). All of the acts were committed during Defendant's performance as a law enforcement officer and were allegedly excessive acts out of proportion to the situation, which was precisely what the State alleged Defendant did in the current case. Moreover, while the other crimes witnesses were the first accountings the jury heard, Defendant's credible rebuttals to their testimonies were the next to the last accounting the jury heard.

17

In the instant matter, Defendant argues that even if the acts were similar, the evidence was unduly prejudicial. The witnesses' testimonies "were the first accounts the jury heard and these testimonies undoubtedly set the tone for the entire trial." Defendant speculates that "a jury of lay people would misuse this information to arrive at the conclusion that because Mr. Stafford used some force at some times, he is more likely to have used deadly force to commit murder."

Concerning the probative versus the prejudicial effect of other crimes evidence, in *State v. Garcia*, 09-1578, pp. 54-55 (La. 11/16/12), 108 So.3d 1, 39, *cert. denied*, ___U.S.___, 133 S.Ct. 2863 (2013), the Louisiana Supreme Court held:

Logically, it falls to the trial court in its gatekeeping function to determine the independent relevancy of such evidence and balance its probative value against its prejudicial effect. La.Code Evid. art. 403; *Huddleston v. United States*, 485 U.S. 681, 690-91, 108 S.Ct. 1496, 1502, 99 L.Ed.2d 771 (1988). Upon finding such relevance, the court must then balance all the pertinent factors weighing in favor of and against its admissibility. *See* C. McCormick, *Evidence* § 190, 768 (6th ed.2006). In this analysis, the court seeks to answer the question: Is this evidence so related to the crime on trial or a material issue or defense therein that, if admitted, its relevancy will outweigh the prejudicial effect, which the defendant will necessarily be burdened with?

The trial court's answer to this question and its corresponding ruling on the admissibility of the additional other crimes evidence will not be disturbed absent an abuse of discretion, *State v. Scales,* 93-2003, pp. 4-5 (La.5/22/95), 655 So.2d 1326, 1330-31, *cert. denied,* 516 U.S. 1050, 116 S.Ct. 716, 133 L.Ed.2d 670 (1996). Finally, the erroneous admission of other crimes evidence has long been held subject to harmless error review. La.Code Crim. Proc. art. 921; *State v. Johnson,* 94-1379, pp. 14-15 (La.11/27/95), 664 So.2d 94, 100-01 (errors leading to improper admission of evidence subject to harmless-error analysis; error harmless if verdict 'surely unattributable' to error)(quoting *Sullivan v. Louisiana*, 508 U.S. 275, 279, 113 S.Ct. 2078, 2081, 124 L.Ed.2d 182 (1993)).

Chad Mayeux was an officer with the Marksville City Police when Steven McIntosh was arrested during a Fourth of July celebration. Officer Mayeux testified he first noticed Mr. McIntosh at the fight. He said Mr. McIntosh was

yelling and screaming. Officer Mayeux ordered him to leave the area, but Mr. McIntosh refused, stating he had dropped his car keys. Officer Mayeux described mayhem occurring at the time. He asked Mr. McIntosh to leave and afterwards he would help look for the car keys, but again Mr. McIntosh refused. Officer Mayeux arrested him, and Mr. McIntosh wrestled with the officer when he tried to apply handcuffs. Mr. Mayeux tasered Mr. McIntosh. However, Mr. McIntosh continued to fight the officer. Finally, Defendant applied the pepper spray. Officer Laken Rico was one of the officers at the fight following the Fourth of July fireworks. He testified there were at least fifty to one hundred people involved but less than a dozen officers attempting to control the situation. He testified that considering the degree of hostility, no officer applied excessive force while attempting to disburse the crowd.

A detective from Bunkie, Louisiana, Lawrence Bordelon, testified that in 2011, he was the officer who arrested Aleathia Barbin, whose car was being repossessed. He stated that the repo-man requested help from the police because Ms. Barbin was going "spastic." He attempted to deal with Ms. Barbin, but she continued to fight him, cussed at him, and in general was creating a ruckus in the neighborhood. The detective then requested back-up. Defendant was one of the officers from Marksville who responded. The detective said he finally got Ms. Barbin handcuffed and was attempting to put her into the patrol car when Defendant arrived to help. Ms. Barbin refused to get into the vehicle and was kicking at the officers when Defendant tasered her.

Ms. Slocum, Ms. Dixon's aunt and Jeremy's babysitter the night of the shooting, testified that she lived next door to Sammy Carmouche when it was alleged that he shot a neighbor's dog. Ms. Slocum testified that she was sitting on her front porch when she saw a dog. While she did not see the dog being shot, she

saw Mr. Carmouche with a rifle in his hand. When Officer Cory Guillot confronted Mr. Carmouche at his front door, Mr. Carmouche shoved the officer up against the wall. Ms. Slocum stated she ran down the street to get Defendant because she believed Mr. Carmouche was going to hurt Officer Guillot. She stated that the officers had to taser Mr. Carmouche to get him under control.

In the instant matter, it is irrelevant whether the trial court erred when it permitted the State's witnesses to testify that they were victims of Defendant's intentional acts of harm, as Defendant has failed to show undue prejudice in this case such that it deprived him of a fair trial. Thus, the other crimes evidence cannot be said to have attributed to the verdict in this case, as, according to the State, the evidence was submitted pursuant to La.Code Crim.P. art. 404(B) to show specific intent to commit harm. While this evidence may have been relevant to the charge of second degree murder and attempted second degree murder, specific intent crimes, it appears that the jury rejected the State's allegation of specific intent to kill since it found Defendant guilty of manslaughter.

Louisiana Revised Statutes 14:31 defines Manslaughter, in pertinent part as:

> (1) A homicide which would be murder under either Article 30 (first degree murder) or Article 30.1 (second degree murder), but the offense is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self-control and cool reflection. Provocation shall not reduce a homicide to manslaughter if the jury finds that the offender's blood had actually cooled, or that an average person's blood would have cooled, at the time the offense was committed[.]

While specific intent to cause death or great bodily harm is not necessary for a conviction of manslaughter, a specific intent to kill is required for a conviction of attempted manslaughter. *State v. Logan,* 45,136, (La.App. 2 Cir. 4/14/10), 34 So.3d 528, 536, *writ denied,* 10-1099 (La. 11/5/10), 50 So.3d 812. "To support a conviction for attempted manslaughter, the state must prove the defendant

20

specifically intended to kill the victim and committed an overt act in furtherance of that goal." *State v. Glover*, 47,311, p. 5 (La.App. 2 Cir. 10/10/12), 106 So.3d 129, 135, *writ denied*, 12-2667 (La. 5/24/13), 116 So.3d 659. A jury has the prerogative to compromise and render a lesser verdict whenever it could have convicted as charged. *State ex rel. Elaire v. Blackburn*, 424 So.2d 246, (La.1982), *cert. denied*, 461 U.S. 959, 103 S.Ct. 2432 (1983). A compromise verdict is a verdict which does not "fit" the evidence, but which the jurors deemed to be fair. *Id.* Where a defendant fails to interpose a timely objection to a legislatively provided responsive verdict which is not also a lesser and included offense of the crime charged, a conviction will not be reversed if such a verdict is returned, regardless of whether the verdict is supported by the evidence, as long as the evidence is sufficient to support the offense charged. *Id.* (It has been held that the act of pointing a firearm directly at a person and pulling the trigger is evidence of specific intent to kill). *State v. Lawson*, 08-123 (La.App. 5 Cir. 11/12/08), 1 So.3d 516.) It would be unfair to permit the defendant to have the advantage of the possibility that a lesser "compromise verdict" will be returned and then to raise the complaint for the first time on appeal. *Id*

Furthermore, Defendant makes only a conclusory statement that the evidence was unduly prejudicial and does not argue in what manner the evidence was so prejudicial to his defense that he was denied a fair trial. Accordingly, we find that Defendant's assignment of error number three lacks merit.

## ASSIGNMENT OF ERROR NO. 4:

Defendant argues that the trial court erred when it did not grant his motion for a mistrial following the State's elicitation of prejudicial testimony from a defense character witness regarding a rape allegation made against Defendant a few years prior to the current incident. Defendant argues that the "[i]ntroduction

of this unrelated allegation of aggravated rape is so immensely prejudicial" that he could not get a fair trial once the information was given to the jury. We find no merit to this contention.

In *State v. Bagley,* 378 So.2d 1356, 1357-58 (La.1979), the supreme court discussed the state's ability to cross-examine a defendant's character witness and solicit evidence of the defendant's bad character:

> Evidence of a defendant's good character is always admissible to show that it is unlikely he committed the crime with which he is charged. LSA-R.S. 15:480. However, the State is not permitted to show that the defendant is a bad person for the purpose of convincing the jury it is more likely than not that he is guilty. Thus, the State is allowed to introduce evidence of the defendant's bad character only for the purpose of rebutting evidence of good character presented on the defendant's behalf. LSA-R.S. 15:481. LSA-R.S. 45:479 provides that a man's character, good or bad, is that reputation which he enjoys in the community, and hence no witness may testify as to his personal opinion of the defendant.
>
> When a defendant chooses to place his character at issue by introducing evidence of his good character, the State is permitted to rebut such evidence either by calling witnesses to testify to the bad character of the defendant, or by impeaching the defense witnesses' ability to testify to the defendant's character. This Court has adopted the position that the cross-examination of a character witness may extend to his knowledge of particular misconduct, prior arrests, or other acts relevant to the particular moral qualities as are pertinent to the crime with which the defendant is charged. R.S. 15:480; *State v. Frentz*, 354 So.2d 1007 (La.1978); *see also State v. Harvey*, 329 So.2d 731 (La.1976); *State v. Knight,* 323 So.2d 765 (La.1975); *State v. Ivy*, 307 So.2d 587 (La.1975); *State v. Banks*, 307 So.2d 594 (La.1975). The purpose of such inquiries is to expose the witnesses' possible lack of knowledge regarding the character of the defendant, or the witnesses' standard of evaluation.

Furthermore, the fifth circuit in *State v. Sterling*, 95-673, p. 13 (La.App. 5 Cir. 2/27/96), 670 So.2d. 1316, 1323, noted that in *State v. Johnson,* 389 So.2d 372, 376 (La.1980), the supreme court delineated "certain safeguards regulating the state's examination of a character witness," as follows:

> The trial judge must conduct a hearing out of the presence of the jury to determine whether the prosecutor has sufficient grounds for cross-examining the character witness as to defendant's prior bad acts or

crimes, and that the examination will be conducted in the proper form; that is, that questions are preceded by "have you heard," rather than "do you know." If the court determines that the interrogation should proceed, the jury should be informed of its exact purpose either at the conclusion of the cross-examination or in the jury charge.

At trial, Defendant put Ellis Walker on the stand to testify as to Defendant's good character. Chief Walker testified he was the Chief of Police of Marksville City Police in 2010 until 2013. He stated he had known Defendant since 2007. He stated that he conducted yearly evaluations of his officers and that Defendant's evaluations were average. He promoted Defendant from sergeant to lieutenant. Defense counsel asked him if there were ever any complaints filed against Defendant. Chief Walker replied that only those persons Defendant arrested made complaints, but he never found any of the complaints credible. The State objected, arguing that defense was going beyond what was permitted concerning the reputation Defendant enjoyed in the community. Following a bench conference in chambers, defense counsel continued questioning Chief Walker. Defense counsel asked the Chief whether he thought Defendant was a good person, and he answered affirmatively. Chief Walker stated Defendant always obeyed his orders and never abused his authority as a police officer.

During cross-examination of Chief Walker, the State asked if he had ever suspended Defendant from his duties. Chief Walker answered yes. Defendant objected for the reason that the evidence the State was attempting to elicit was irrelevant, unduly prejudicial, and therefore inadmissible. Again, out of the hearing of the jury, the State argued that defense counsel opened the door to the questioning of Chief Walker regarding Defendant's training, awards, and specific events, rather than discussing general character evidence. The trial court overruled defense counsel's objection, stating:

23

We must remember that the State objected to Chief Walker testifying at all as a characteristic [sic] witness because it didn't go to simply the moral reputation of Officer Stafford and at the request of the Defense I allowed this character evidence to be submitted because the fact that Officer Stafford is accused of committing an offense while a police officer, so therefore [t]he moral quality of a police officer is at issue. Normally, character witnesses simply identify themselves and state how long they've known the defendant or the accused and how and whether they are familiar with the reputation or character of the accused within the community or in this case in the Marksville Police Department. Once it is established that a witness has heard and has knowledge of the accused['s] reputation the law says that the State may seek to under mind [sic] the validity of this testimony by asking this character witness if he has heard of certain acts of misconduct by the defense, I'm sighting [sic] code of evidence article 608c in State versus Bagley 378 so 2nd 1356. Although, this type of cross examination is simply to discredit the witness's knowledge about the accused[s] reputation [ ] and it has some prejudicial effect our law says that a character witness may be asked if he has heard, if he has heard if the defendant has been arrested for certain offenses, or if he has been otherwise accused of any misconduct. The specific question here, after an officer or Chief Walker testified at length about the good qualities of Officer Stafford while under his supervision as Chief of Police he certainly can and the defense has opened the door to this introduction of any such evidence where in the prosecution seeks to rebut this evidence with any allegation of arrests, or bad character, or bad conduct in reference to Officer Stafford's duties as a police man if within the knowledge of Chief Walker. They can question the witness as to their knowledge of any prior acts of the misconduct of the accused, sighting [sic] code of evidence Article 405a which is directly on point. And although this evidence otherwise would be inadmissible, the door has been opened by the testimony of Chief Walker and is therefore admissible, the objection is overruled.

The State asked Chief Walker again whether Defendant had ever been suspended from his duties. The Chief explained that when an officer is accused of committing a crime, he is suspended pending resolution of the charges. In this case, the Chief testified that in 2011 Officer Stafford had been indicted for two counts of aggravated rape. Defendant then moved for a mistrial arguing that after the jury heard the testimony, there was no possibility Defendant could get a fair trial. The defense argued that Defendant was charged with murder committed during the performance of his law enforcement duties, and rape was not relevant to the particular moral qualities pertinent to the crime of which Defendant allegedly

24

committed while he was executing his duties as a police officer. The trial court

denied the motion for a mistrial, ruling:

> As to the fact as it being a specific trait involved in the offense for
> which the accused is on trial, rape, the allegation of rape is the
> allegation of a violent offense. Mr. Stafford is accused of violent
> offenses here. Very simply the character evidence that was adduced
> as to his character as a police officer was made an issue by the defense
> and the State saw the open door and they're walking through it.

In *State v. Guss*, 99-1817 (La.App. 4 Cir. 12/6/00), 775 So.2d 622, Mr.

Guss's co-defendant, Mr. Vereen, was convicted of second degree murder using a

firearm. At trial, Mr. Vereen called a character witness who testified she had never

known him to carry a firearm, she had never known him to be violent, and she

believed he was a respectful young man. The state desired to ask her if she knew

about his pending armed robbery charge. The defendant argued that any relevance

to the evidence would be outweighed by the prejudicial effect. Following

argument in chambers, the trial court ruled the State had the right to question the

witness concerning her knowledge of the armed robbery. In open court, the

witness responded that she did not know about the pending armed robbery charge,

and defendant moved for a mistrial. Noting that the armed robbery involved a

firearm, the fourth circuit stated:

> The purpose of cross-examination of a defense character
> witness, is to expose the witness's possible lack of knowledge
> regarding the character of the defendant. *State v. Bagley*, 378
> So.2d 1356, 1358 (La.1979). Cross-examination may properly
> extend to the witness's knowledge of particular misconduct,
> prior arrests, or other acts relevant to moral qualities pertinent
> to the defendant's crime. *State v. Rault*, 445 So.2d 1203, 1209
> (La.1984), *cert. denied, Rault v. Louisiana*, 469 U.S. 873, 105
> S.Ct. 225, 83 L.Ed.2d 154 (1984).

*Id*. at 627.

In *State v. Rault*, 445 So.2d 1203 (La.), *cert. denied,* 469 U.S. 873, 105 S.Ct.

225 (1984), Rault was indicted for the murder of a secretary in the company where

he worked. He put an old friend on the stand to attest to his good character. On cross-examination, the State asked the witness why the defendant left his job. The witness replied that the defendant got a better job. The state then asked: "'He got a better job. You didn't know that he had stolen $180,000 from that company by an embezzlement scheme, did you?'" *Id.* at 1208-09. The supreme court did not find the evidence so prejudicial as to support a motion for a mistrial. The supreme court opined:

> LSA-C.Cr.P. art. 770(2) mandates a mistrial when the prosecutor refers to another crime committed or alleged to have been committed by the defendant *as to which evidence is not admissible.* The accused may introduce evidence of his character to show he is not the type of person who would commit the particular crime charged. Until he does so, his character is not at issue. *State v. Frentz*, 354 So.2d 1007 (La., 1978). If the accused does place his character at issue, the state is permitted to "introduce testimony of the bad character of the accused only in rebuttal of the evidence introduced by him to show good character." LSA-R.S. 15:481.

> Cross-examination of a character witness may extend to his knowledge of particular misconduct, prior arrests, or other acts relevant to the moral qualities pertinent to defendant's crime. *State v. Bagley*, 378 So.2d 1356 (La., 1979). Such inquiries expose the witnesses' possible lack of knowledge of defendant's character, and his standard of evaluation.

> Rault called the witness to show that the crime charged was inconsistent with his character, thus putting his character at issue. Since Rault opened the door in this manner, the state could question the witness about his knowledge of defendant's acts. The question about the embezzlement focused directly upon the character trait the witness ascribed to defendant: that he was a good honest man.

*Id.* at 1209.

In the instant matter, we agree with the trial court that the evidence of Defendant's rape allegations were similar to the current allegations in that both were acts of violence and that the door was opened when the Chief testified Defendant was a "good person." The crimes of which Defendant was accused concerned his actions as a law enforcement officer. At trial, Chief Walker testified

regarding Defendant's performance as a police officer. Following the chief's revelation of Defendant's suspension because of the rape allegations, he further testified that there were two separate alleged victims. Both charges were dismissed in May 2012, due to DNA evidence and inconsistencies in the victims' accounting of the alleged acts. One allegation was apparently made by a relative who was visiting at the time, and the other was an allegation of sexual assault from several years prior. There was no indication that the alleged rapes involved Defendant's duties as a police officer. The disclosure of the allegations did not expose the witness's lack of knowledge of defendant's character since the chief had suspended Defendant at the time he was indicted.

In the instant matter, we find that even if the trial court erred in permitting the testimony, when other crimes, wrongs, or acts are erroneously admitted, the trial error is subject to a harmless error analysis, and the error is harmless if the verdict was surely unattributable to the error. *State v. Johnson,* 94-1379, (La. 11/27/95), 664 So.2d 94, 102. Defendant argues only that "[w]hen a person's professional character is at the center of the State's case, can he not present evidence to refute that without 'opening the door' for unrelated crimes and bad acts? The rape allegation had nothing to do with Mr. Stafford's conduct as a police officer."

Defendant was charged with second degree murder and attempted second degree murder. Apparently, the jury did not accept the allegations of rape as evidence of Defendant's specific intent to kill, since the jury choose to impose the lesser included convictions, as discussed above. Even if the rape allegations should not have been admitted as the Defendant argues, Defendant fails to show that the lesser verdicts were a result of the erroneously admitted evidence of other bad acts.

27

Defendant further argues that the trial court erred when it did not issue a limiting instruction to the jury regarding the alleged other crimes evidence. Defendant notes that following Chief Walker's testimony the trial court told the jury:

> Because it's generally not allowed to talk about someone being accused who's on trial anything in their past, any alleged bad activity. And the reason, and that's why you were outside, I allowed this evidence to come in because the defense put on evidence of the character of Officer Stafford as a police officer, which in my ruling opened the door to any conduct while a police officer with Chief Walker. So that's the explanation because it's normally considered to have prejudicial effect and that was the ruling and the law says for me to explain it to you and that's why it was done. Okay, through no fault of any lawyer, anybody, Chief Walker, anybody else, it was simply a ruling that I have made.

Defendant asserts that this "instruction" was insufficient and did not satisfy the requirement to instruct "the jury as to the relationship between the evidence of a crime, the alleged offense at trial, and the proper way to consider this evidence." In *State v. Nguyen*, 04-321, pp. 15-16 (La.App. 5 Cir. 9/28/04), 888 So.2d 900, 910, *writ denied*, 05-220 (La. 4/29/05), 901 So.2d 1064 (footnote omitted), the fifth circuit held:

> Moreover, the final jury charge must contain an instruction regarding the limited purpose for which the "other crimes" evidence was received. At that time, the court must instruct the jurors that the defendant cannot be convicted of any charge other than the one named in the indictment, or one responsive thereto. *State v. Prieur*, 277 So.2d at 130. *See also, State v. Kennedy*, 00-1554, p. 6 (La.4/3/01), 803 So.2d 916, 921.
>
> Our review of the record reveals, and defendant concedes, that he did not request a limiting charge at the time the "other crimes" evidence was introduced. Under *Prieur* and *Kennedy*, because the defendant did not request a limiting instruction, the trial judge was not required to issue a limiting instruction at the time of the "other crimes" testimony.
>
> Defendant also complains that the trial court erred in failing to include a limiting instruction on "other crimes" evidence in its jury charges. Our review of the court's final jury instructions reveals that there was no mention of "other crimes" evidence. Further, we note

28

that defendant neither requested a special jury charge nor timely objected to the final jury charges.

La.C.Cr.P. art. 801(C) provides:

> A party may not assign as error the giving or failure to give a jury charge or any portion thereof unless an objection thereto is made before the jury retires or within such time as the court may reasonably cure the alleged error. The nature of the objection and grounds therefore shall be stated at the time of objection. The court shall give the party an opportunity to make the objection out of the presence of the jury.

This Court has held that, the requirements of *Prieur* notwithstanding, a defendant is required to make a timely objection under Article 801 in order to preserve a jury charge issue for review. *State v. Dauzart*, 02-1187 at p. 11, 844 So.2d at 167. Defendant did not make a timely objection; therefore, defendant did not properly preserve the issue for appellate review. We are precluded from addressing this issue.

While the trial court is required to instruct the jury as to the limited purpose of the other crimes evidence upon request of the Defendant, we find that, in the current case, Defendant did not request a limiting instruction to the jury before or after the above explanation the trial court gave to the jury, nor did the Defendant object when the trial court did not instruct the jury during its final instructions about the proper use of "other crimes" evidence. Accordingly, we find that Defendant's assignment of error number four lacks merit.

## ASSIGNMENT OF ERROR NUMBER 5:

Defendant argues that the maximum sentences imposed in his case are constitutionally excessive. He notes that maximum sentences are generally reserved for the worst offenders. Although Defendant asserts both sentences are excessive, his argument is largely limited to the sentence imposed on the manslaughter conviction. We find no merit to this contention.

The law is well-settled concerning the standard to be used in reviewing excessive sentence claims:

29

La. Const. art. I, § 20 guarantees that, "[n]o law shall subject any person to cruel or unusual punishment." To constitute an excessive sentence, the reviewing court must find the penalty so grossly disproportionate to the severity of the crime as to shock our sense of justice or that the sentence makes no measurable contribution to acceptable penal goals and is, therefore, nothing more than a needless imposition of pain and suffering. *State v. Campbell*, 404 So.2d 1205 (La.1981). The trial court has wide discretion in the imposition of sentence within the statutory limits and such sentence shall not be set aside as excessive absent a manifest abuse of discretion. *State v. Etienne*, 99-192 (La.App. 3 Cir. 10/13/99); 746 So.2d 124, *writ denied,* 00-0165 (La.6/30/00); 765 So.2d 1067. The relevant question is whether the trial court abused its broad sentencing discretion, not whether another sentence might have been more appropriate. *State v. Cook,* 95-2784 (La.5/31/96); 674 So.2d 957, *cert. denied*, 519 U.S. 1043, 117 S.Ct. 615, 136 L.Ed.2d 539 (1996).

*State v. Barling*, 00-1241, 00-1591, p. 12 (La.App. 3 Cir. 1/31/01), 779 So.2d 1035, 1042-43, *writ denied,* 01-838 (La. 2/1/02), 808 So.2d 331. This court further stated in *State v. Angelle*, 13-508, p. 6 (La.App. 3 Cir. 11/6/13), 124 So.3d 1247, 1252, *writ denied*, 13-2845 (La. 5/23/14), 140 So.3d 724, and *writ denied*, 13-2892 (La. 8/25/14), 147 So.3d 693:

> The trial court has wide discretion in imposing a sentence. Absent a manifest abuse of that discretion, we will not deem a sentence excessive. *State v. Pyke*, 95-919 (La.App. 3 Cir. 3/6/96), 670 So.2d 713. The appellate court should consider the nature of the crime, the background of the offender, and the sentences imposed for similar crimes in making its determination. *State v. Telsee*, 425 So.2d 1251 (La.1983). A sentence will only be deemed constitutionally excessive if it is grossly out of proportion to the seriousness of the offense. *State v. Dorthey*, 623 So.2d 1276 (La.1993). In addition, "[m]aximum sentences are reserved for the most serious violations and the worst offenders." *State v. Farhood*, 02-490, p. 11 (La.App. 5 Cir. 3/25/03), 844 So.2d 217, 225.

The range of imprisonment for a conviction for manslaughter, in pertinent part, is:

> B. Whoever commits manslaughter shall be imprisoned at hard labor for not more than forty years. However, if the victim killed was under the age of ten years, the offender shall be imprisoned at hard labor, without benefit of probation or suspension of sentence, for not less than ten years nor more than forty years.

La.R.S. 14:31. For an attempted manslaughter, the range of punishment is:

(3) In all other cases he shall be fined or imprisoned or both, in the same manner as for the offense attempted; such fine or imprisonment shall not exceed one-half of the largest fine, or one-half of the longest term of imprisonment prescribed for the offense so attempted, or both.

La.R.S. 14:27(D)(3).

The sentencing hearing was held on March 31, 2017. At the hearing, impact statements were given by Jeremy Mardis' grandmother, Jeremy's paternal aunt, and his father, Christopher Few. Defendant's aunt, Bertha Walker Andrews, and his cousin, Jacinta Walker, gave statements. Defendant also spoke, apologizing profusely for his actions which caused the death of Jeremy. Following arguments by Defendant and the State, the trial court sentenced the Defendant. The trial court read its reasons for sentencing into the record, in pertinent part, as follows:

> The evidence adduced at Trial confirms that Derrick Walker Stafford is a product of a very fine Rapides Parish Family. Derrick Walker Stafford had a desire early in his life to become a police officer and he did further that pursuit by becoming employed by the town of Cheneyville Police Department, Marksville Police Department, Marksville Ward Marshall's Office, and Alexandria Ward Marshall's Office.

> The testimony adduced at Trial by Derrick Walker Stafford was extremely impressive. Stafford testified in an extremely calm manner considering the circumstances. This testimony confirms this Court's prior involvement with Stafford in several cases whether Stafford appeared as a police officer/witness in Division B of the Twelfth Judicial District Court. Officer Stafford has always appeared in a very calm manner and has always been extremely respectful to the Court process. This respect continued throughout the pendency of these proceedings.

> Additionally, this Court has reviewed many photographs of Derrick Stafford with several friends and family members together with several letters from relatives, friends, and concerned individuals. For the most part these letters describe Derrick Walker Stafford as a hard working, trustworthy family man. These letters indicate and confirm that Derrick Walker Stafford is a good man, good husband and good father to his children. For the most part, these letters request leniency. However, some of the letters received were extremely critical of the entirety of the process.

31

Additionally, this Court has considered the criminal background of the defendant, Derrick Stafford. The criminal record of Derrick Stafford reflects four arrests - - - one in 2001 for Possession of Marijuana; one in 2007 for Discharge of a Firearm in the City Limits; one in 2011 for Aggravated Rape; and the arrest for the matters before the Court. The Aggravated Rape charge was dismissed by the Rapides Parish District Attorney. The Possession of Marijuana charge and Discharge of a Firearm in the City Limits charge reflect no disposition, indicating they also were dismissed. Additionally, the Court has considered the allegations that Officer Stafford used excessive force on individuals after they were under arrest. These are only mentioned as allegations due to the fact that these matters remain outstanding.

In any regard, this Court has a firm belief that Derrick Walker Stafford is a good man, family man, good father and good husband. Unfortunately, there are times when good people do bad things. In the case at bar, a good - - - Derrick Walker Stafford has been convicted by an Avoyelles Parish Jury of doing some extremely bad things - - - Committing two very serious crimes. The evidence submitted at Trial brought forth many surprises to this Court. Although having presided over this proceeding from its inception, this Court was amazed at how much evidence was submitted at Trial that was not part of the Pre-Trial Discovery and/or Motion process.

. . . . These limited comments are only issued to confirm that the verdict of the jury was substantiated by evidence submitted. In particular, the evidence confirms that the police chase ended at the end of Martin Luther King Drive at its intersection with Tensas Street. Apparently Few backed into the Greenhouse vehicle and then pulled forward and away in a perpendicular manner; stopped; then backed up away from the three stationary police cars again at a perpendicular angle. While backing up Officer Stafford yelled for Few to put up his hands and while doing so Officer Stafford aimed his handgun at Few and pulled the trigger, shooting fourteen times.

As a result of the shooting Christopher Few sustained serious injuries and Jeremy Mardis was killed. Some of the bullets in the body of Jeremy Mardis were traced to the gun of Derrick Stafford. Two of these bullets alone were sufficient in and of themselves to cause death to this six year old child. This evidence in and of itself clearly justifies the finding of the responsive verdicts returned by the jury, at the least. After these considerations, the Court looked to the law. Article 894.1 of the Louisiana Code of Criminal Procedure sets forth several sentencing guidelines for Courts to consider. This law provides that if a defendant has been convicted of a felony, the Court should impose a sentence of imprisonment if there is an undue risk that during any period of suspended sentence the defendant would commit another crime; if the defendant is in need of correctional treatment or a custodial environment that can be provided most effectively by his commitment to an institution; if a lesser sentence

would deprecate the seriousness of the defendant's crime. Considering all evidence and research, it is obvious that this portion of our law requires a sentence of imprisonment in the case at bar. Article 894.1 goes on to list certain aggravating and mitigating circumstances for Court's [sic] to consider. In considering the aggravating circumstances set forth in Article 894.1, the following are found to be applicable:

1) Officer Stafford's conduct during the commission of the crime manifested deliberate cruelty to the victims, Christopher Few and Jeremy Mardis.
2) Officer Stafford used his position or status as a police officer to facilitate the commission of the offense.
3) Officer Stafford used actual violence in the commission of his crimes.
4) The offenses resulted in significant permanent injury to Christopher Few and death to Jeremy Mardis, thereby resulting in a significant loss to the family of Jeremy Mardis.
5) Officer Stafford used a dangerous weapon, that being a .40 mm handgun, in the commission of the offenses.

In considering mitigating circumstances as set forth by Article 894.1

of the Code of Criminal Procedure, the following are found to apply:

1) The imprisonment of Officer Stafford will entail hardship to himself and/or his family. This provision applies to every case.
2) The actions of Christopher Few, though insufficient to establish a defense of justifiable homicide and/or self-defense, was a substantial factor in the commission of the offense.

The trial court sentenced Defendant to fifteen years at hard labor for attempted manslaughter, with credit for time served, as per the mandatory provisions of La.Code Crim.P. art. 893.3(D), and to forty years at hard labor for manslaughter, with credit for time served. Twenty years of the later sentence imposed is to be served without parole, probation or suspension of sentence, pursuant to the provisions La.Code Crim.P. art. 893.3E(1)(2), which provides that if a firearm is discharged during the commission of such a violent felony, the sentence imposed shall be a minimum term of twenty years. Such sentence shall be imposed without benefit of parole, probation or suspension of sentence. A

defendant sentenced under the provisions of this law shall not be eligible for parole during the period of the mandatory minimum sentence.

The trial court supported its decision to sentence Defendant to the maximum sentence for manslaughter by referencing several cases, which the trial court contended were similar in nature and circumstance: *State v. Sepulvado,* 26,948 (La.App. 2 Cir. 5/10/95), 655 So.2d 623, *writ denie*d, 95-1437 (La. 11/13/95), 662 So.2d 465; *State v. Bailey*, 07-130 (La.App. 3 Cir. 10/3/07), 968 So.2d 247; *State v. Bowens*, 14-416 (La.App. 4 Cir. 12/10/14), 156 So.3d 770, *writ denied,* 15-66 (La. 10/23/15), 179 So.3d 598; and *State v. Jackson*, 51,011 (La.App. 2 Cir. 1/11/17), 211 So.3d 639.

At the hearing on Defendant's motion to reconsider the sentence, held on May 30, 2017, Defendant argued that the above cases were distinguishable from the current case when it came to handing out maximum sentences to first time felony offenders and to a person in Defendant's position. Defendant pointed out that in *Bowens*, the fourth circuit noted:

> In reviewing a claim that a sentence is excessive, an appellate court generally must determine whether the trial judge has adequately complied with statutory guidelines in La.C.Cr.P. art. 894.1 and whether the sentence is warranted under the facts established by the record. If adequate compliance with Article 894.1 is found, the reviewing court must determine whether the sentence the district court imposed is too severe in light of the particular defendant as well as the particular circumstances of the case, "keeping in mind that maximum sentences should be reserved for the most egregious violators of the offense so charged." *State v. Landry*, 2003-1671, p.8 (La.App. 4 Cir. 3/31/04), 871 So.2d 1235, 1239; *see also State v. Bonicard*, 98-0665, p.3 (La.App. 4 Cir. 8/4/99), 752 So.2d 184, 185.

*Bowens,* 156 So.3d at 781.

In *Bowens*, the defendant, his brother, and their girlfriends went to the auto repair shop of the victim. The brothers got into an argument with the victim, which escalated into a shootout between the brothers and the victim. The victim

34

ran away but was shot in the leg. As the victim lay on the ground begging for his life, the brothers stood over him and shot him in the head and chest several times, killing him. Although charged with second degree murder, the defendant was convicted of manslaughter. The fourth circuit affirmed the maximum sentence of forty years, noting that "the defendant shot at the victim seventeen times and struck him eight times" while the victim lay helpless on the ground. *Id*. at 782.

In *Sepulvado*, 655 So.2d 623, the defendant stood aside and allowed her husband to beat her six-year-old son, starve him, make him sleep in a box, beat him some more, then dump him into scalding water because the boy soiled his pants. The little boy died from his injuries. The victim's mother, who was charged with first degree murder, was convicted of manslaughter and received the maximum prison sentence, which at the time was twenty-one years. Stating that "[t]he trial court in the instant case noted particularly that the defendant's six-year-old son was beaten, tortured, and scalded in a manner which led to an especially cruel and heinous death[,]" the second circuit affirmed the sentence. *Id*. at 629.

In *Bailey*, 968 So.2d 247, the defendant was indicted for second degree murder but pled guilty to manslaughter and was sentenced to the maximum forty years at hard labor. The defendant and co-defendant went to the home of the victim to pick up a shipment of marijuana. When they startled the victim in bed, he pulled a gun. The two men, who were also armed, chased the victim outside, where they shot him two times. When the victim attempted to return to his house, the two men ambushed him and shot him again, seventeen times. Affirming the sentence, this court noted:

> In *State v. Smith*, 02-719, p. 4 (La.App. 3 Cir. 2/12/03), 846 So.2d 786, 789, *writ denied,* 03-562 (La.5/30/03), 845 So.2d 1061 (citations omitted), this court discussed the factors it would consider in order to determine whether a sentence shocks the sense of justice or makes no meaningful contribution to acceptable penal goals:

35

> In deciding whether a sentence is shocking or makes no meaningful contribution to acceptable penal goals, an appellate court may consider several factors including the nature of the offense, the circumstances of the offender, the legislative purpose behind the punishment and a comparison of the sentences imposed for similar crimes. While a comparison of sentences imposed for similar crimes may provide some insight, "it is well settled that sentences must be individualized to the particular offender and to the particular offense committed." Additionally, it is within the purview of the trial court to particularize the sentence because the trial judge "remains in the best position to assess the aggravating and mitigating circumstances presented by each case."
>
> "Generally, maximum sentences are reserved for those cases that involve the most serious violations of the offense charged and the worst type of offender." *State v. Jones,* 05-735, p. 6 (La.App. 5 Cir. 2/27/06), 924 So.2d 1113, 1116.

*Id.* at 250.

In *Jackson*, 211 So.3d 639, the defendant was charged with second degree murder but pled guilty to manslaughter. She was sentenced to forty years imprisonment. She told a witness she was going to scare the victim with a gun, but she instead shot the victim twice in the head. The second circuit noted: "Where a defendant has pled guilty to an offense which does not adequately describe his conduct or has received a significant reduction in potential exposure to confinement through a plea bargain, the trial court has great discretion in imposing even the maximum sentence for the pled offense. *State v. Sanders*, 49,241 (La.App. 2 Cir. 10/22/14), 151 So.3d 160, *writ denied*, 2014-2536 (La. 1/16/15), 157 So.3d 1133." *Id.* at 642. The second circuit affirmed the maximum sentence, stating that the "defendant's actions manifested deliberate cruelty to the victim because she was aware of his vulnerability due to his age, ill health, and disability[.]" *Id.* at 643.

Finally, in *State v. Holmes*, 99-631 (La.App. 1 Cir. 2/18/00), 754 So.2d 1132, *writ denied*, 00-1020 (La. 3/30/01), 788 So.2d 440, the defendant, originally charged with second degree murder, was convicted of manslaughter and attempted manslaughter. He had followed his ex-wife and her boyfriend home one night. The defendant, armed with a rifle, put a ladder to an upstairs bedroom window where he saw his ex-wife and her boyfriend in bed. The defendant crawled into the room, shot and killed the boyfriend, and wounded his ex-wife. While his ex-wife bled, he asked her for sex. The first circuit did not find the maximum sentence of forty years for killing the boyfriend or the maximum sentence of twenty years imprisonment for the attempted killing of his ex-wife excessive, stating:

> Maximum sentences are appropriately imposed only for the most serious violation of the described offense and for the worst kind of offender. *State v. McKnight,* 98-1790, p. 24 (La.App. 1 Cir. 6/25/99), 739 So.2d 343, 359. Considering the deliberate steps and preparation required for the defendant to have committed the crimes, their serious and tragic nature, and the devastating losses to the victims and their families, we find the defendant and his crimes to be the worst kind in this class of offender and offense. We do not find that the sentences imposed herein were excessive.

*Id*. at 1135.

At the motion to reconsider the sentence hearing in this case, the trial court defended its choice of cases it relied upon in determining an appropriate sentence in the current case and the jury's decision to convict Defendant of the responsive verdicts:

> And the cases that I cited that I used in my sentencing were chosen after a lot of research because they as Mr. Derbes pointed out reflected for the most part a situation where a person was charged with murder and either received a reduced verdict or pled to a reduced . . . Ebony Trusty[1] was charged

---

[1] The trial judge explained during sentencing that in 1997 he presided over the case of *State v. Ebony Trusty.*

with first degree murder and ended up pleading to manslaughter with an agreement of a sentencing hearing. And that was considered to be a great reduction.

According to the trial court, Ebony Trusty stabbed her grandmother seventy-eight times. Charged with first degree murder, she pled guilty to manslaughter and received the maximum sentence. The trial court denied Defendant's motion to reduce the sentences.

In the instant matter, it can reasonably be argued that the evidence was sufficient to find Defendant guilty of second degree murder and attempted second degree murder. Instead, the jury compromised and rendered a responsive verdict of manslaughter and attempted manslaughter. Defendant was sentenced to fifteen years imprisonment at hard labor for the attempted manslaughter conviction and forty years imprisonment at hard labor for the manslaughter conviction - the first twenty years without the benefit of probation, parole, or suspension of sentence, with the sentences to run concurrently.

La.R.S. 14:31(B) provides, in pertinent part:

B. Whoever commits manslaughter shall be imprisoned at hard labor for not more than forty years. However, if the victim killed was under the age of ten years, the offender shall be imprisoned at hard labor, without benefit of probation or suspension of sentence, for not less than ten years nor more than forty years.

The responsive verdicts of manslaughter and attempted manslaughter are extreme benefits to Defendant, as the sentences are for two separate offenses involving two separate victims, one of whom was under the age of ten. Further, the sentences imposed are to run concurrently, rather than consecutively. Finally, Defendant's ineligibility for probation, parole, or suspension of sentence is limited to twenty years, which is potentially earlier than it would have been pursuant to La.R.S. 14:31(B). As such, we find that the sentences imposed by the trial court

are not constitutionally excessive. Accordingly, we find that Defendant's assignment of error number five lacks merit.

## CONCLUSION:

For the foregoing reasons we affirm the trial court's April 20, 2017, judgment sentencing Defendant to fifteen years imprisonment at hard labor for the attempted manslaughter conviction and forty years imprisonment at hard labor for the manslaughter conviction, with the first twenty years without the benefit of probation, parole, or suspension of sentence, with the sentences to be served concurrently.

**CONVICTIONS AND SENTENCES AFFIRMED.**